LEWIS, J.
This case is before the Court to review the decision of the First District Court of Appeal in Smallwood v. State, 61 So.3d 448 (Fla. 1st DCA 2011). In its decision, the district court ruled upon the following question and then certified the question to be of great public importance:
DOES THE HOLDING IN UNITED STATES V. ROBINSON, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), ALLOW A POLICE OFFICER TO SEARCH THROUGH PHOTOGRAPHS CONTAINED WITHIN A CELL PHONE WHICH IS ON AN ARRESTEE’S PERSON AT THE TIME OF A VALID ARREST, NOTWITHSTANDING THAT THERE IS NO REASONABLE BELIEF THAT THE CELL PHONE CONTAINS EVIDENCE OF ANY CRIME?
Id. at 462. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
FACTS AND PROCEDURAL HISTORY
The Robbery
On January 24, 2008, a person armed with a gun robbed a convenience store in Jacksonville, Florida. According to the store clerk, the robber wore gloves and a mask that covered his mouth and nose. After entering the store, the robber jumped over the counter and demanded money from the clerk. The robber removed approximately $1000 to $1500 from a cabinet along with a cigar box that contained $13,000 to $15,000, which was folded and secured with rubber bands. Finally, the robber absconded with a thirty-eight caliber, black and silver handgun from the store.
After the robber left the store, the clerk called 911 and informed the dispatcher that he knew who had just robbed the store because the robber was a regular customer. The clerk testified that, during the robbery, the robber demanded money at least fourteen times, and the clerk recognized his voice. The clerk testified that he only knew the robber/customer by his nickname, which was “Dooley.” The clerk stated that Dooley had visited the store daily for the past year and a half, and that he had routinely talked with Dooley while Dooley purchased goods. During a photo lineup and at trial, the clerk identified the defendant, Cedric Tyrone Smallwood, as the man who had robbed his store, and the customer known to him as Dooley.
On the day of the robbery, William Cook observed a man running from the convenience store into a field and climbing over a six-foot fence which bordered a park. Keith Seay, who was walking through the park, saw Dooley jump over the fence. Seay and Dooley bumped fists when they passed each other as a means of greeting, and Seay noticed that Dooley was wearing gloves. As Seay continued walking, he turned around and saw that Dooley passed a trash can and was no longer wearing the gloves. Seay identified Dooley as Cedric Tyrone Smallwood from a photo lineup and at trial. The police later removed gloves from the trash can observed by Seay. Testing of the gloves revealed the DNA of more than one individual; however, Cedric Tyrone Smallwood could not be excluded as a contributor to the DNA mixture found in either glove.
Officer Ike Brown responded to the robbery scene. Brown recognized the name Dooley, but did not know the actual name of the suspect. Brown went to the residence of Dooley and learned from Dooley’s mother that his real name is Cedric Small-wood. One day after the robbery, an arrest warrant was issued for Smallwood in connection with the convenience store robbery. On February 4, 2008, Officer Brown arrested Smallwood pursuant to the warrant. Although Officer Brown also seized *727 Smallwood’s cell phone during the search incident, to the arrest, the arrest report signed by Officer Brown did not mention the phone or the data that Officer Brown observed on the phone.
Pretrial Proceedings
On March 10, 2009, more than a year after Smallwood’s arrest, and just before the commencement of trial,[1] Officer Brown revealed to the prosecutor that after he had seized Smallwood’s phone and separated Smallwood from the phone by securing him in a police vehicle, Brown accessed and searched for data on the phone. There is nothing in the record to suggest that Brown conducted this search based upon a concern for officer safety or destruction of evidence. During the search, Brown found and observed five digital images that appeared to be relevant to the robbery. Before the prosecutor viewed the images on the phone, the prosecutor informed defense counsel of these developments, and the prosecutor then sought to obtain a search warrant to view the images. The relevant images, and the dates they were taken, are:
(1) A black and silver handgun with a crucifix draped over it, dated January 28, 2008 (four days after the robbery);
(2) An image of hands with engagement rings, dated January 29, 2008 (five days after the robbery);
(3) A black and silver handgun next to a fanned-out stack of money, dated January 28, 2008 (four days after the robbery);
(4) A photo of Smallwood’s fiancée holding a bundle of money that is folded and secured with a rubber band, dated January 25, 2008 (the day after the robbery); and
(5) A photo of Smallwood holding a bundle of money that is folded and secured with a rubber band, dated January 25, 2008 (the day after the robbery).
Defense counsel objected to admission of the photos found in the phone, contending that although the State had obtained a search warrant before the prosecutor utilized the photos, the State’s actions did not cure the illegality of the initial search of Smallwood’s phone by Brown. The defense argued that Smallwood had a reasonable expectation of privacy in the data and information stored within his mini-computer cell phone, and the search-incident-to-arrest exception to the warrant requirement did not apply because the search was not conducted for the purpose of preserving evidence.
The trial court held that the search of the phone was legal, and defense counsel subsequently filed a written motion to suppress the information and data in the form of photo images obtained from the cell phone. During a hearing on the motion, defense counsel reiterated that people have an expectation of privacy in their technologically advanced phones, which are small electronic data sources, and Officer Brown’s search of the cell phone, data, and images constituted an invasion of that constitutional zone of privacy. The defense also contended that cell phone data in the form of photo images are different from a call log on a cell phone, and a lesser expectation of privacy may apply to information that is simply call-log data. The State, while recognizing that a reasonable expectation of privacy exists in a cell phone, countered by asserting that such data must be considered more similar to a wallet or a closed container found on an arrestee’s person, which police have been properly allowed to search incident to an arrest. The State asserted that if Small- *728 wood had actually printed the data in the form of photos and was carrying them in his pocket at the time of the arrest, the legality of the search that provided access to the photo images would not have been in dispute. The State asserted that the presence of data and the photo images in a cell phone device did not render the search any less legal.
The trial court denied the motion to suppress, specifically relying upon the decision in New York v. Belton, 453 U.S. 454, 460-61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in which the United States Supreme Court held, in the context of an automobile search incident to arrest, that any containers, whether open or closed, within an arrestee’s reach may be searched under the search-incident-to-arrest warrant exception. The court also relied upon United States v. Finley, 477 F.3d 250, 260 (5th Cir.2007), in which the United States Circuit Court of Appeals for the Fifth Circuit upheld the validity of a cell phone search incident to an arrest.
Trial Proceedings
During trial, the defense renewed its objection to the admission of the data from the device, in the form of photo images, and relied upon the recent decision of the United States Supreme Court in Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). However, the trial court refused to even consider the recent case and the prior ruling on the admissibility of the photos. During his trial testimony, Officer Brown explained why he searched the cell phone and viewed the digital images on the cell phone:
BROWN: I looked in the phone for two reasons. One, to see if it was the same one he had been calling me from, and to see if, in fact, did he have any pictures or anything that might be evidence to the crime.
PROSECUTOR: In your training and experience with ... the Sheriffs Office, is it unusual for a suspect, any suspect to take photos or have videos of them that are of evidentiary value?
BROWN: No, it’s not unusual.
On April 23, 2009, a jury convicted Cedric Tyrone Smallwood of one count of robbery and specifically found that Small-wood possessed a firearm during the commission of the crime. The jury also convicted Smallwood of the crime of possession of a firearm by a convicted felon.[2] The trial court sentenced Smallwood to fifty years’ incarceration with a ten-year mandatory minimum on the robbery conviction, and fifteen years’ incarceration with a three-year mandatory minimum on the possession conviction, with the sentences to run consecutively.
The Appeal
On appeal, the First District Court of Appeal affirmed. See Smallwood, 61 So.3d at 462. In its decision, the First District presented a comprehensive history of the search-incident-to-arrest warrant exception in general, as well as decisional law that would apply to searches of cell phones under this exception. See id. at 449-59. The First District recognized that there is no uniform view and noted that such searches have been held both valid and invalid by various state and federal courts. See id. at 453-59. In rejecting Smallwood’s Fourth Amendment challenge, the district court relied upon United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), in which the United States Supreme Court held that the search-incident-to-arrest warrant exception permits a search and inspection of the contents of personal items found on the arrestee, even if it is unlikely that the arrestee has a weapon or evidence related *729 to the crime on his person. See id. at 450, 459. The district court further explained:
[N]either Robinson nor Belton requires an item be a “container” in order to be searchable upon arrest.
[[Image here]]
... Thus, whether or not a cell phone is properly characterized as a traditional “container” is irrelevant to whether or not it is searchable upon arrest. The Supreme Court has clearly and repeatedly found that anything found on an arrestee or within an arrestee’s immediate control may be searched and inspected upon arrest. There is nothing in the language of ... these cases that would permit this court to find an exception for cell phones.
Id. at 459, 460.
In affirming the decision of the trial court, the First District rejected Small-wood’s contention that cell phones warrant heightened constitutional protection because of the nature and ability to store enormous amounts of information and data, and instead concluded that there is “nothing in the language of Robinson or its progeny that would permit this court to limit a search incident to arrest in this manner.” Id. at 461. Despite affirming the trial court decision on the admissibility of the cell phone images, the First District expressed great concern about its ruling:
The bright-line rule established by Robinson may have been prudent at the time, given the finite amount of personal information an arrestee could carry on his or her person or within his or her reach. However, the Robinson court could not have contemplated the nearly infinite wealth of personal information cell phones and other similar electronic devices can hold. Modern cell phones can contain as much memory as a personal computer and could conceivably contain the entirety of one’s personal photograph collection, home videos, music library, and reading library, as well as calendars, medical information, banking records, instant messaging, text messages, voicemail, call logs, and GPS history. Cell phones are also capable of accessing the internet and are, therefore, capable of accessing information beyond what is stored on the phone’s physical memory. For example, cell phones may also contain web browsing history, emails from work and personal accounts, and applications for accessing Facebook and other social networking sites. Essentially, cell phones can make the entirety of one’s personal life available for perusing by an officer every time someone is arrested for any offense. It seems this result could not have been contemplated or intended by the Robinson court.
Id. In light of these concerns, the First District certified a question to this Court as one addressing a matter of great public importance. See id. at 462.
ANALYSIS
We commence our review by noting a longstanding tenet of United States Supreme Court precedent with regard to the Fourth Amendment:
[T]he most basic constitutional rule in this area is that “searches conducted outside the judicial process, without pri- or approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” The exceptions are “jealously and carefully drawn,” and there must be “a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.” “[T]he burden is on those seeking the exemption to show the need for it.”
Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 *730 (1971) (emphasis supplied) (footnotes omitted).[3]
The Fourth Amendment to the United States Constitution and section 12 of Florida’s Declaration of Rights both guarantee citizens the right to be free from unreasonable searches and seizures. The search and seizure provision of the Florida Constitution contains a conformity clause articulating the extent to which Florida courts are bound by federal interpretations of the Fourth Amendment. Article I, section . 12, of the Florida Constitution provides; in full:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the Jpth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the Uth Amendment to the United States Constitution.
(Emphasis supplied.)
Article I, section 12, only references decisions of the United States Supreme Court; therefore, the conformity clause does not apply with regard to decisions of other federal courts. See State v. Daniel, 665 So.2d 1040, 1047 n. 10 (Fla. 1995), receded from on other grounds, Holland v. State, 696 So.2d 757, 760 (Fla. 1997). In Daniel, this Court explained that “[a]ny Supreme Court pronouncement factually and legally on point with the present case [will] automatically modify the law of Florida to the extent of any inconsistency.” 665 So.2d at 1047 n. 10 (emphasis supplied).
At issue in this case is whether the decision in Robinson is both factually and legally on point with the circumstances of the instant case and whether it is controlling. For the reasons discussed below, we conclude that Robinson is neither factually nor legally on point. Accordingly, we hold that the conformity clause does not require Florida courts to apply the holding of Robinson to the search of the electronic device cell phone incident to an arrest.
United States v. Robinson and the Conformity Clause
In Robinson, a police officer stopped the vehicle that the respondent, Robinson, was driving based on a belief that Robinson’s license had been revoked. See 414 U.S. at *731 220, 94 S.Ct. 467. After Robinson exited the vehicle, the officer arrested him for operating a vehicle after license revocation. See id. During the search of Robinson, the officer felt an object in the breast pocket of Robinson’s coat. See id. at 221-23, 94 S.Ct. 467. The officer removed the item, which was revealed to be a crumpled cigarette package. See id. at 223, 94 S.Ct. 467. The officer looked inside the package and discovered gelatin capsules of heroin. See id. Robinson was subsequently convicted of drug charges. See id. at 219, 223, 94 S.Ct. 467. The United States Supreme Court held that the officer’s warrantless search of Robinson did not violate the Fourth Amendment. See id. at 224, 94 S.Ct. 467. In reaching this conclusion, the Supreme Court explained
When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape_In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction.
Id. at 226, 94 S.Ct. 467 (quoting Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). The Court further noted that there was no need to evaluate in each individual case whether one of the two purposes for the warrant-less search incident to arrest was present:
A police officer’s determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a “reasonable” search under that Amendment.
... Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of [Robinson] or that he did not himself suspect that [Robinson] was armed. Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as “fruits, instrumen-talities, or contraband” probative of criminal conduct.
Id. at 235-36, 94 S.Ct. 467 (emphasis supplied) (footnotes omitted).
Although Robinson discusses the search-incident-to-arrest exception to the warrant requirement, that case clearly did not involve the search of a modern electronic device and the extensive information and data held in a cell phone. When Robinson was decided, hand-held portable electronic devices in the form of cell phones containing information and data were not in common and broad use. Further, in recent years, the capabilities of these small electronic devices have expanded to the extent that most types are now interactive, computer-like devices. Vast amounts of private, personal informa *732 tion can be stored and accessed in or through these small electronic devices, including not just phone numbers and call history, but also photos, videos, bank records, medical information, daily planners, and even correspondence between individuals through applications such as Face-book and Twitter. The most private and secret personal information and data is contained in or accessed through small portable electronic devices and, indeed, many people now store documents on their equipment that also operates as a phone that, twenty years ago, were stored and located only in home offices, in safes, or on home computers.
Moreover, as noted by the United States Court of Appeals for the Seventh Circuit, a search of an electronic device that operates as a cell phone incident to an arrest could evolve into a search of the interior of an arrestee’s home depending on the technological capabilities of the particular piece of equipment:
Judges are becoming aware that a computer (and remember that a modern cell phone is a computer) is not just another purse or address book. “[Ajnalogizing computers to other physical objects when applying Fourth Amendment law is not an exact fit because computers hold so much personal and sensitive information touching on many private aspects of life.... [Tjhere is a far greater potential for the ‘inter-mingling’ of documents and a consequent invasion of privacy when police execute a search for evidence on a computer.” United States v. Lucas, 640 F.3d 168, 178 (6th Cir. 2011); see also United States v. Walser, 275 F.3d 981, 986 (10th Cir.2001); United States v. Carey, 172 F.3d 1268, 1275 (10th Cir.1999); cf. United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162,1175-77 (9th Cir.2010); United States v. Otero, 563 F.3d 1127, 1132 (10th Cir.2009). An iPhone application called iCam allows you to access your home computer’s webcam so that you can survey the inside of your home while you’re a thousand miles away. “iCam— Webcam Video Streaming,” http://itunes. apple.com/us/app/icam-webcam-video-streaming/id296273730?mt=8 (visited Feb. 6, 2012[ ]). At the touch of a button a cell phone search becomes a house search, and that is not a search of a “container” in any normal sense of that word, though a house contains data.
United States v. Flores-Lopez, 670 F.3d 803, 805-06 (7th Cir.2012) (emphasis supplied).
Thus, we agree and conclude that the electronic devices that operate as cell phones of today are materially distinguishable from the static, limited-capacity cigarette packet in Robinson, not only in the ability to hold, import, and export private information, but by the very personal and vast nature of the information that may be stored on them or accessed through the electronic devices. Consistent with this conclusion, we hold that the decision of the United States Supreme Court in Robinson, which governed the search of a static, non-interactive container, cannot be deemed analogous to the search of a modern electronic device cell phone.
The dissent disagrees with this determination and instead contends that the search of Smallwood’s cell phone was authorized under Robinson. To reach this conclusion, the dissent essentially analogizes a static, inert package of cigarettes to an interactive, computer-like, handheld device that may not only store, but also remotely access, vast quantities of highly personalized and private information. In our view, attempting to correlate a crumpled package of cigarettes to the cell phones of today is like comparing a one-cell organism to a human being. The two objects are patently incomparable because of the obvious and expansive differences between them.
*733 The bases upon which the dissent relies to disagree with our conclusion that Robinson is distinguishable from the issue we address today are highly dubious. The dissent posits “[tjhere is no suggestion here that the police used Mr. Smallwood’s phone to access any remotely stored data.” Dissent at 742. However, there is no evidence in the record to suggest that the invasion was limited within Smallwood’s phone. It is undisputed that the police did access stored data. Officer Brown did not discuss other information, but this does not mean that the five incriminating photographs were the only items that he viewed on the phone.[4] The dissent suggests that the motion to suppress was limited in scope as though that was the standard applicable. Although this case may involve limited material, the scope of the search was not limited. Other personal, private data not related to the specific charges here, regardless of how the material was stored, may not be relevant to these pending criminal charges against Smallwood, but were searched without limitation. There would be no reason for Smallwood to move for suppression of any private data or information not relevant to the charges in this case.
The dissent further asserts that although “the quantity of information on a cell phone may be greater than the quantity of information contained in other items on the person of an arrestee, there is no reason to believe that the character of the cell phone information is necessarily of a more sensitive nature than is the information contained in other types of items that may be found on an arrestee’s person.” Dissent at 742. This statement defies logic and common sense in this digital and technological age. At this time, we cannot ignore that a significant portion of our population relies upon cell phones for email communications, text-message information, scheduling, and banking. Indeed, even justices on this Court routinely use cellular phones to access Court email accounts, and highly confidential communications are received daily on these electronic devices. For the dissent to contend that a cellular phone does not carry information of a different “character” than other types of personal items an individual may carry on his or her person is to ignore the plainly (and painfully) obvious. The cell phones of today have a greater capacity not just in the quantity of information stored, but also in the quality of information stored.
Accordingly, we conclude that the conformity clause does not require Florida courts to apply Robinson to determine whether a search warrant must be obtained before law enforcement may inspect the contents of a cell phone.[5]
*734 The Search-Incident-to-Arrest Warrant Exception and the Search of Smallwood’s Cell Phone
Although the specific facts of Robinson do not control the outcome of the issue presented by this case, United States Supreme Court precedent with regard to the search-incident-to-arrest warrant exception in general nonetheless must guide our analysis. See art. I, § 12, Fla. Const. In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court approved the warrantless search of an arrestee’s person incident to arrest, and any area into which the arrestee may reach, and articulated two specific bases for this exception to the warrant requirement:
When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction.
Id. at 762-63, 89 S.Ct. 2034. Since the decision in Chimel, the Supreme Court has referenced officer safety and preservation of evidence as the specific justifications for the search-incident-to-arrest warrant exception. See, e.g., Thornton v. United States, 541 U.S. 615, 620, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (noting that the search-incident-to-arrest warrant exception “was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence”). These same two specific rationales were applied to allow searches of automobiles incident to arrest. See Bel-ton, 453 U.S. at 460-61, 101 S.Ct. 2860 (relying on the dual rationales announced in Chimel for the proposition that “when a policeman has made a lawful custodial arrest of the occupants of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile” (footnotes omitted)).
However, in 2009, the Supreme Court specifically limited the scope of warrant-less searches incident to arrest. In Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), law enforcement officers arrested Gant for driving with a suspended license. See id. at 335, 129 S.Ct. 1710. After the police had placed Gant in handcuffs and separated him from the automobile by securing him in a police car, two officers proceeded to search Gant’s vehicle. See id. During the search, they discovered a bag of cocaine in the pocket of a jacket located on the back seat of the vehicle. See id. at 336, 129 S.Ct. 1710.
The United States Supreme Court held that the search of Gant’s vehicle violated the Fourth Amendment. See id. at 344, 129 S.Ct. 1710. The Court first noted that a search incident to arrest only includes the arrestee’s person and the area within his immediate control, i.e., the area into which he may. reach to acquire a weapon or destroy evidence. See id. at 339, 129 S.Ct. 1710 (citing Chimel, 395 U.S. at 763, *735 89 S.Ct. 2034). The Court then concluded that “[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.” Id. (emphasis supplied).[6] The High Court held that because Gant had been separated from his vehicle and was secured in a patrol car at the time of the search, the dual rationales for the search-incident-to-arrest warrant exception were not present, and the officers were required to obtain a warrant before they could search the vehicle. See id. at 835, 129 5.Ct. 1710. The Supreme Court concluded that because the officers failed to obtain a warrant, the search of Gant’s vehicle was unreasonable under the Fourth Amendment. See id. at 351,129 S.Ct. 1710.
Gant demonstrates that while the search-incident-to-arrest warrant exception is still clearly valid, once an arrestee is physically separated from an item or thing, and thereby separated from any possible weapon or destructible evidence, the dual rationales for this search exception no longer apply. Applying Supreme Court precedent from Chimel and Gant to the instant case, we conclude that Officer Brown unquestionably was authorized to take physical possession of Smallwood’s electronic device used as a phone as part of the search incident to the arrest because the device was present on Small-wood’s body. See Chimel, 395 U.S. at 762-63, 89 S.Ct. 2034. However, once the electronic, computer-like device was removed from Smallwood’s person, there was no possibility that Smallwood could use the device as a weapon, nor could he have destroyed any evidence that may have existed on the phone. Accordingly, neither the officer protection nor the evidence preservation justification for the warrant exception applied. See Gant, 556 U.S. at 335, 129 S.Ct. 1710. Thus, pursuant to Gant, Officer Brown was constitutionally required to obtain a warrant before searching the contents of, and the data in, Smallwood’s electronic device cell phone. See also Coolidge, 403 U.S. at 454-55, 91 S.Ct. 2022 (noting that searches without a warrant are per se unreasonable, and that exceptions to the warrant requirement are “jealously and carefully drawn”) (quoting Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)). Because the State has not established that “the exigencies of the situation made [the search of the electronic device] imperative,” id. at 455, 91 S.Ct. 2022 (quoting McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948)), we conclude that this exception to the warrant requirement was not applicable, and the search of Smallwood’s computer-like device violated the Fourth Amendment. There is no evidence or hint of evidence that this particular phone could be used as a weapon or that evidence could be destroyed remotely.
The dissent basically disregards Gant and its refinement of Fourth Amendment Supreme Court decisional law when it asserts that a cell phone may be searched without a warrant under the search-incident-to-arrest exception after the phone has been removed from the person of the arrestee. While Robinson authorized a “search [of] the person of the accused when legally arrested,” 414 U.S. at 225, 94 *736 S.Ct. 467 Gant clarifies that once the ar-restee is separated from any possible weapons or evidence, the search-incident-to-arrest warrant exception no longer applies. 556 U.S. at 835, 129 S.Ct. 1710. Under such circumstances, a search of the phone is not a search of the person incident to an arrest, but is an unauthorized search of highly advanced technology which may contain extensive personal information. The search-incident-to-arrest warrant exception is inapplicable here and once a cell phone has been removed from the person of the arrestee, a warrant must be secured pursuant to Gant before officers may conduct a search that complies with United States Supreme Court precedent.
Other state and federal courts have reached similar conclusions. In State v. Smith, 124 Ohio St.3d 163, 920 N.E.2d 949, 956 (2009), cert, denied, — U.S.-, 131 S.Ct. 102,178 L.Ed.2d 242 (2010), the Ohio Supreme Court held that the search of a cell phone incident to arrest is unconstitutional when the search is unnecessary for the safety of law enforcement officers and there are no exigent circumstances. In reaching its decision, the state court first concluded that a cell phone is not the same as a “closed container” in this context for Fourth Amendment purposes:
Objects falling under the banner of “closed container” have traditionally been physical objects capable of holding other physical objects. Indeed, the United States Supreme Court has stated that in this situation, “container” means “any object capable of holding another object.” New York v. Belton. ... One such example is a cigarette package containing drugs found in a person’s pocket, as in ... Robinson. ...
We acknowledge that some federal courts have likened electronic devices to closed containers.... Each of these cases, however, fails to consider the Supreme Court’s definition of “container” in Belton, which implies that the container must actually have a physical object within it. Additionally, the pagers and computer memo books of the early and mid 1990s bear little resemblance to the cell phones of today. Even the more basic models of modern cell phones are capable of storing a wealth of digitized information wholly unlike any physical object found within a closed container. We thus hold that a cell phone is not a closed container for purposes of a Fourth Amendment analysis.
Id. at 954 (citations omitted). The court then concluded that, given the ability of modern cell phones to be the database for and provide access to tremendous amounts of private data, they are entitled to a heightened expectation of privacy. See id. at 955. Based on these conclusions, the Ohio Supreme Court ultimately held:
Once the cell phone is in police custody, the state has satisfied its immediate interest'in collecting and preserving evidence and can take preventive steps to ensure that the data found on the phone are neither lost nor erased. But because a person has a high expectation of privacy in a cell phone’s contents, police must then obtain a warrant before intruding into the phone’s contents.
Id. (emphasis supplied). We agree with and adopt the rationale of the Ohio Supreme Court.
Similarly, in United States v. McGhee, 2009 WL 2424104, at *4 (D.Neb.2009), a federal district court granted a motion to suppress evidence discovered on a cell phone that was seized from the defendant’s person during a search incident to the defendant’s arrest. In reaching its decision, the district court relied upon Gant for the proposition that “ ‘[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the *737 search-incident-to-arrest exception are absent and the rule does not apply.’ ” Id. at *3 (quoting Gant, 556 U.S. at 839, 129 S.Ct. 1710). The district court then explained:
[Although McGhee had the cell phone within his immediate control, the cell phone did not present a risk of harm to the officers. Additionally, no evidence suggests the cell phone appeared to be or to conceal contraband or other destructible evidence. Therefore, the officers were not justified in conducting a warrantless search of McGhee’s cell phone as incident to his arrest.

Id.

Finally, in United States v. Park, 2007 WL 1521573 (ND.Cal.2007), the United States District Court for the Northern District of California disagreed with the holding of the United States Court of Appeals for the Fifth Circuit in United States v. Finley, 477 F.3d 250 (5th Cir.2007), that the information on a cell phone may be permissibly searched under the seareh-in-cident-to-arrest warrant exception. In Park, at some point after the arrest of the defendants, officers searched the data, contents, and information on the defendants’ cell phones. See id. at *2-4. When the defendants sought to suppress the evidence discovered as a result of those searches, the government asserted, in pertinent part, that the warrantless searches were proper as incident to the defendants’ arrests. See id. at *5. The district court disagreed.
In support of its holding, the district court relied upon the decision of the United States Supreme Court in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), overruled on other grounds, California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619, (1991), which involved the seizure of a footlocker incident to the defendants’ arrests. See Park, 2007 WL 1521573, at *8. In Chadwick, the Supreme Court concluded:
Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
433 U.S. at 15, 97 S.Ct. 2476 (emphasis supplied) (footnote omitted).
While the Fifth Circuit in Finley considered a cell phone to be a container on the arrestee’s person, and therefore fully searchable incident to arrest pursuant to the Supreme Court decisions in Robinson and Belton, the district court in Park held that a cell phone should be considered only a possession within an arrestee’s immediate control, akin to the footlocker in Chadwick. See Park, 2007 WL 1521573, at *7-8. The reason for the district court’s conclusion was that “modern cellular phones have the capacity for storing immense amounts of private information.” Id. at *8 (“Individuals can store highly personal information on their cell phones, and can record their most private thoughts and conversations on their cell phones through email and text, voice and instant messages.”). The district court then concluded:
The searches at issue here go far beyond the original rationales for searches incident to arrest, which were to remove weapons to ensure the safety of officers and bystanders, and the need to prevent concealment or destruction of evidence .... Officers did not search the phones out of a concern for officer safety, or to prevent the concealment or destruction of evidence. Instead, the purpose was purely investigatory. Once *738 the officers lawfully seized defendants’ cellular phones, officers could have sought a warrant to search the contents of the cellular phones.
Id. at *8 (footnote omitted).
Without specific guidance from the United States Supreme Court or the United States Court of Appeals for the Ninth Circuit, the district court in Park was “unwilling to further extend this doctrine to authorize the warrantless search of the contents of a cellular phone — and to effectively permit the warrantless search of a wide range of electronic storage devices— as a ‘search incident to arrest.’ ” Id. at *9. In 2012, the same federal court again rejected the validity of cell phone searches that the government contended were permissible under the search-incident-to-arrest warrant exception. See United States v. Gibson, 2012 WL 1123146, at *9-10 (N.D.Cal.2012) (“The subsequent search and data retrieval of information contained on the cell phones found on defendant’s person appear to go far beyond the purpose underlying the rationales in support of warrantless searches incident to arrest.”).
We recognize that some other state and federal courts have elected to follow Finley and its progeny. However, as previously noted, the United States Supreme Court has not addressed the constitutionality of cell phone searches under the search-incident-to-arrest warrant exception. Where the Supreme Court has not resolved a legal issue under the Fourth Amendment, differing positions by state and federal courts are not only common, but are to be expected. A court presented with the disputed matter may adopt the rationale of the court or courts it finds to be most legally and logically persuasive. While the dissent commences by referencing four federal decisions that permit the search of a cell phone without a warrant under the search-incident-to-arrest exception, the fact remains that both state and federal courts have held in a manner that is consistent with our decision today. We have carefully reviewed and considered the decisional law that addresses this unresolved Fourth Amendment issue, and we conclude that the line of eases requiring law enforcement to obtain a search warrant before accessing the data, information, and content of an electronic device cell phone that is removed from a defendant at the time of arrest is, quite simply, more persuasive.
In our view, allowing law enforcement to search an arrestee’s cell phone without a warrant is akin to providing law enforcement with a key to access the home of the arrestee. Physically entering the arres-tee’s home office without a search warrant to look in his file cabinets or desk, or remotely accessing his bank accounts and medical records without a search warrant through an electronic cell phone, is essentially the same for many people in today’s technologically advanced society. We refuse to authorize government intrusion into the most private and personal details of an arrestee’s life without a search warrant simply because the cellular phone device which stores that information is small enough to be carried on one’s person. Accordingly, we decline to adopt the contrary positions of the decisions relied upon by the dissent.
Good Faith
Although the State contends that a good faith exception should apply to Officer Brown’s improper search, and relies upon the decision of the United States Supreme Court in Davis v. United States, -U.S.-, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), in support of this assertion, we disagree. In Davis, the United States Supreme Court held that the exclusionary rule did not apply to evidence discovered as a result of an automobile search inci *739 dent to arrest conducted before the Supreme Court issued its decision in Gant. See id. at 2429. In reaching this holding, the Supreme Court noted that since 1981, lower courts had relied on the Supreme Court’s decision in Belton to “establish a bright-line rule authorizing the search of a vehicle’s passenger compartment incident to a recent occupant’s arrest.” Id. at 2428. Since the 2009 Gant decision significantly circumscribed the holding of Belton with regard to searches of an automobile incident to an arrest, the Supreme Court concluded that an officer who had reasonably relied upon, and executed a search that conformed to, the holding in Belton should not be penalized for a change in the law that occurred after the search in question. See id. at 2428-29.
Unlike the automobile search incident to arrest, for which the Belton Court articulated what was considered to be a “simple, bright-line rule,” id. at 2424, there is currently no United States Supreme Court precedent that addresses or expressly permits a search of the data, information, and content of a cellular phone under the search-incident-to-arrest warrant exception. As previously discussed, no bright-line rule exists for law enforcement officers to rely upon with regard to searches under these facts, unlike the automobile search in Davis. See also United States v. Gomez, 807 F.Supp.2d 1134,1146 (S.D.Fla. 2011) (“The Eleventh Circuit has not addressed the limitations (or lack thereof) accompanying the search incident to arrest of a cell phone.”). Accordingly, we hold that the good faith exception to the exclusionary rule announced by the Supreme Court in Davis is not applicable here.
Harmless Error
The State next contends that even if the photos from Smallwood’s cell phone should not have been admitted during trial, any error by the trial court is harmless. The erroneous admission of evidence obtained from an improper search is subject to a harmless error analysis. See, e.g., Evans v. State, 989 So.2d 1219, 1223 (Fla. 5th DCA 2008); Felix v. State, 566 So.2d 342, 343 (Fla. 2d DCA 1990). “The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Here, while there may be evidence to demonstrate that Smallwood robbed the Jacksonville convenience store on January 24, 2008, including witness identifications, this is not the standard for review as to whether harmless error occurred. As we explained in DiGuilio in 1986:
[H]armless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence....
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution’s case may have played.a substantial part in the jury’s deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
[[Image here]]
... The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming *740 evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. at 1136, 1139 (emphasis supplied) (quoting People v. Ross, 67 Cal.2d 64, 60 Cal.Rptr. 254, 429 P.2d 606, 621 (1967) (Traynor, C.J., dissenting), rev’d, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968)).
Under the standard articulated in DiGuilio, we conclude that the admission of the images from Smallwood’s cell phone cannot be deemed harmless error. These photos depicted a weapon that resembled the gun stolen from the convenience store, as well as Smallwood and his fiancée posing with money packaged in the manner described by the convenience store clerk, i.e., folded and secured with rubber bands. It is indisputable that such pictures played a role in Smallwood’s conviction. In fact, the trial court stated during sentencing: “The one surprising thing to me, quite frankly, in the case is what took the jury so long to come back with a conviction when it was pretty clear to me from the photos.” (Emphasis supplied.) Thus, even the trial court was of the view that the photos were powerful evidence of Smallwood’s guilt. Despite the presence of evidence of guilt, we have no choice but to hold that Smallwood is entitled to a new trial because there is no reasonable possibility that the improperly admitted photos did not contribute to his conviction. See DiGuilio, 491 So.2d at 1135.
CONCLUSION
For the above-stated reasons, we answer the certified question in the negative. We further hold that, while law enforcement officers properly separated and assumed possession of a cell phone from Small-wood’s person during the search incident to arrest, a warrant was required before the information, data, and content of the cell phone could be accessed and searched by law enforcement.
Although the dissent asserts that our decision today has “the potential to work much mischief in Fourth Amendment law,” this ominous prediction is without support. Dissent at 741. Our decision actually pro- • tects the Fourth Amendment and United States Supreme Court precedent by ensuring that the exceptions to the warrant requirement remain “jealously and carefully drawn,” and by mandating that there be “a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.” Coolidge, 403 U.S. at 455, 91 S.Ct. 2022 (footnotes omitted). The position of the dissent, which would permit the search here even though no issue existed with regard to officer safety or evidence preservation, is both contrary to, and the antithesis of, the fundamental protections against government intrusion guaranteed by the Fourth Amendment.
Moreover, although the dissent claims that our decision today is too broad and “transform[s] the traditional understanding of the right of the police to inspect items found on the person of an arrestee,” dissent at 742, this contention is simply untrue. The First District Court of Appeal certified a question with regard to searches of cell phones incident to an arrest after the phone has been separated from the person arrested, and we have provided an answer with regard to such searches under these facts. Our decision *741 is narrowly limited to the legal question and facts with which we were presented, and we are confident that law enforcement will understand the limited scope of our holding.
In light of the foregoing, we quash the decision of the First District and remand for further proceedings consistent with this opinion.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. The record reflects that voir dire had concluded and a jury had been selected. Due to Officer Brown’s delayed disclosure, defense counsel sought a continuance, and dismissal of the original jury was necessary.

. The parties stipulated that Smallwood was previously convicted of a felony in 2004.

. Neither party contests that the search of Smallwood qualified as a "search” under the Fourth Amendment. The United States Su- . preme Court has articulated two standards for determining when a Fourth Amendment search has occurred: (1) whether there has been a physical trespass or intrusion upon private property, and (2) whether the person searched had a reasonable expectation of privacy in the area searched by government officials. See United States v. Jones, — U.S. -, 132 S.Ct. 945, 949-50, 181 L.Ed.2d 911 (2012). We conclude that both rationales apply to the search that occurred here. First, Officer Brown physically touched Small-wood’s ' body and the electronic equipment that was in contact with his body (unquestionably private property) during the search. Second, Smallwood possessed a "legitimate expectation of privacy” in his person and his personal electronic equipment, which was invaded when Officer Brown conducted the search incident to arrest.

. During a pretrial hearing, the assistant state attorney revealed that at least thirty-eight digital photographs existed on Smallwood’s cellular phone. There is no indication as to the nature of the thirty-three additional images that Smallwood stored on his personal cellular phone, nor is it clear that Officer Brown limited his search which finally produced incriminating photographs.

. Consistent with our conclusion today, a number of state and federal courts have recognized that the Supreme Court has never addressed the specific issue of whether law enforcement officers may conduct a warrantless search of the data on a cell phone as part of a search incident to a valid arrest. See, e.g., United States v. Wurie, 612 F.Supp.2d 104, 109 (D.Mass.2009); United States v. Deans, 549 F.Supp.2d 1085, 1094 (D.Minn.2008); United States v. Park, 2007 WL 1521573, at *7 (N.D.Cal.2007); State v. Smith, 124 Ohio St.3d 163, 920 N.E.2d 949, 952 (2009); see also United States v. Allen, 416 Fed.Appx. 21, 27 (11th Cir.2011) (unpublished). Despite this gap in precedent, the Supreme Court has nonetheless denied certiorari review in cases that have reached diametrically opposite conclusions. Compare Ohio v. Smith, - U.S. -, 131 S.Ct. 102, 178 L.Ed.2d 242 (2010) *734 (denying certiorari review of case where the Ohio Supreme Court held that the warrant-less search of á cell phone seized from the defendant’s person incident to arrest violated the Fourth Amendment) with Finley v. United States, 549 U.S. 1353, 127 S.Ct. 2065, 167 L.Ed.2d 790 (2007) (denying certiorari review of case where a federal appellate court held that the police properly searched the contents of a cell phone seized from the defendant’s pocket incident to his arrest).

. The Supreme Court made an additional finding with regard to the search of an automobile incident to a suspect's arrest: "[Cjir-cumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.’ ” Gant, 556 U.S. at 343, 129 S.Ct. 1710 (quoting Thornton, 541 U.S. at 632, 124 S.Ct. 2127). Since Smallwood was not in a vehicle at the time he was arrested, this justification is not at issue here.