670 So.2d 1006 (1996)
STATE of Florida, Appellant,
v.
Pablo GIBSON, Fernando Effbain Vega, Armando Angel Quintero, Ruben Antonio Guilfucci, and Hector Torres, Appellees.
No. 93-03924.
District Court of Appeal of Florida, Second District.
February 14, 1996.
Rehearing Denied March 27, 1996.
*1007 Robert A. Butterworth, Attorney General, Tallahassee, and Davis G. Anderson, Jr., Assistant Attorney General, Tampa, for Appellant.
Richard Rocha, Tampa, for Appellee Pablo Gibson.
James Marion Moorman, Public Defender, and Timothy J. Ferreri, Assistant Public Defender, Bartow, for Appellees Fernando Effbain Vega & Ruben Antonio Guilfucci.
Michael Wm. Lebron of the Law Offices of Michael Wm. Lebron, P.A., New York, New York, for Appellee Armando Angel Quintero.
Daniel J. Fernandez of Fernandez & Benito, P.A., Tampa, for Appellee Hector Torres.
PARKER, Judge.
The State of Florida appeals the trial court's order which suppressed all evidence seized pursuant to a search warrant. We affirm the order as it pertains to Torres, but *1008 we reverse the order as it relates to the other defendants.
The state filed a three-count information charging Hector Torres with operating a facility for the baiting of animals and promoting an animal fight and charging Ruben Antonio Guilfucci, Fernando Effbain Vega, Armando Angel Quintero, and Pablo Gibson with baiting animals. All of the charges were based upon a search warrant which authorized the search of the premises of Hector Torres for instruments used for cockfighting.
The first issue we address is that only Torres filed a motion to suppress. A review of the entire record on appeal does not reveal that any of the other defendants adopted or joined in the motion. Counsel for the other defendants, however, did take part in the argument on the motion. The trial court's suppression order applied to all of the defendants. Based on these facts, we conclude that the trial court erred in entering an order which suppressed evidence as it related to Gibson, Vega, Quintero, and Guilfucci.[1]
Now we turn to the merits of Torres's motion to suppress.[2] On June 26, 1993, Detective Howard Northrup applied for a search warrant authorizing the search of the premises of Hector Torres for instruments used for cockfighting. The affidavit alleged that Northrup, a deputy sheriff, had received an anonymous tip from an unknown female caller on May 11, 1993, that cockfights were being conducted on the Torres property. Northrup placed the premises under surveillance between 4:15 p.m. and 5:30 p.m. on May 15, 1993, observed approximately twenty cars and trucks on the premises, heard roosters crowing at the rear of the property, and saw people moving around in the same area. Northrup renewed his surveillance on May 29, 1993, between 3:30 p.m. and 5:00 p.m. This time he observed about twenty-five trucks on the property. He saw other vehicles approach the property, honk their horns at the gate, and then be admitted by a Latin male, who closed and secured the gate. Again, he heard numerous roosters crowing at the back of the property and observed people walking around in the area.
The affidavit further stated that Northrup contacted Tampa Electric Company (TECO) on June 15, 1993, and learned that the subscriber for the property he had under surveillance was Hector Torres. Northrup then made contact with John Hammerberg, a security officer for the electric company. Hammerberg advised Northrup that the electricity usage at the subject property had increased over 800 kilowatt hours during the past six months and proposed visiting the property to see how the increased power was *1009 being used. Hammerberg invited Northrup to accompany him.
Northrup went to the property with Hammerberg on June 15, 1993. During their escorted tour of the property, they found an improper electrical hookup to a mobile home located on the property and an improper electrical hookup to a circular structure with a sawdust floor located behind the mobile home, which had bleachers around it, two wire cages on pulleys, a timer suspended from the ceiling, as well as lighting. While he was still on the premises, Northrup noticed 100 gamecocks in cages behind the mobile home.
Northrup again placed the premises under surveillance on June 19, 1993, between 1:30 p.m. and 3:00 p.m. There were about twenty-five cars and trucks already on the premises and three more arrived while he was there. He heard numerous roosters crowing and saw people moving around the area.
The affidavit closed with the recitation that Miguel Diaz, a detective with the sheriff's office, entered the property on June 26, 1993, and saw cockfighting and gambling. Diaz's name and position were lined through and the name of Mario Martinez, a deputy, was substituted and initialed.
Circuit Judge Chet A. Tharpe issued the warrant on June 26, 1993, authorizing the search of the property and the arrest of Torres. Northrup executed the warrant that same day and seized money and cockfighting paraphernalia.
The court considered depositions when it determined its ruling on the motion to suppress. Hammerberg stated in his deposition that he was uncertain whether he invited Northrup to go with him to the Torres property or whether Northrup asked if he could accompany Hammerberg onto the premises. Martinez's deposition revealed that he never observed gamecocks fighting until he executed the search warrant, even though that allegation was in the affidavit for the search warrant. He did not enter the property until service of the warrant. While waiting for the word to enter, Martinez could see silhouettes through the windows, and he could hear words reflective of gambling, sounds of the cockfights, and cheering. When Judge Tharpe signed the warrant, the last paragraph still read that Miguel Diaz entered the premises and observed cockfighting and gambling. Someone made the change later. Martinez saw Judge Tharpe initial it after execution of the warrant. Judge Tharpe came to the scene and swore in Martinez and asked him what happened before Judge Tharpe initialed the warrant.
The court suppressed the evidence on two grounds. First, the court concluded that the initial warrantless search when Northrup went onto the property with the TECO employee was improper. The court found that Northrup solicited the TECO employee to go onto the property as a subterfuge so that the detective could search the property before he had probable cause. The state argued to the trial court that the search was a proper, legal private search. The Supreme Court has held that evidence obtained in a private search conducted without governmental instigation or participation is admissible because there are no Fourth Amendment considerations. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). In this case, there is substantial, competent evidence in the record to support the trial court's finding that this search was conducted pursuant to governmental instigation. Thus, this cannot be considered a private search. See Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). Because Northrup's actions constituted a warrantless search without probable cause, the statements in the affidavit for search warrant relating to this initial search cannot be considered in the determination of whether probable cause existed to obtain the search warrant. See State v. Ward, 407 So.2d 353 (Fla. 2d DCA 1981).
The state argues on appeal that the evidence should not be suppressed in light of the "independent source" and "inevitable discovery" doctrines. The state never presented these grounds to the trial court to consider; therefore, they should not be considered on appeal. See Steinhorst v. State, 412 So.2d 332 (Fla.1982); Williams v. State, 602 So.2d 643 (Fla. 2d DCA 1992).
The trial court's second ground for suppressing the evidence was the finding that the affidavit for the search warrant contained *1010 a material misrepresentation of fact. When the judge signed the warrant, the affidavit contained a paragraph that Miguel Diaz entered the premises and observed cockfighting and gambling. This never happened because Diaz could not gain access to the premises. After the search was conducted, someone changed the affidavit to state that Mario Martinez entered the premises and observed cockfighting and gambling. The judge initialed the change. The deposition testimony of Martinez shows that prior to the search, he did not enter the premises and observe cockfighting and gambling. Before his entry onto the premises, Martinez only could hear what he believed to be gambling. There was substantial, competent evidence in the record to support the trial court's finding that the affidavit contained a material misrepresentation of fact. Thus, the trial court deleted the false statement from the affidavit when it considered whether probable cause existed. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
The question then becomes whether the officers had probable cause absent what was viewed during the initial warrantless search and the Martinez allegation in the affidavit. The court was left with the following facts: an unidentified person called Northrup and reported that cockfighting was being conducted on the premises; Northrup surveilled the area three times and observed between twenty and twenty-five vehicles, heard roosters crowing, and saw several persons moving about in the same area; and the electricity usage for the premises increased during the past six months. This information would not be enough to constitute probable cause. Thus, the trial court was correct in concluding that the search warrant was not based on probable cause. We, therefore, affirm the order as it relates to Torres and reverse the order as it pertains to the other defendants.
Affirmed in part; reversed in part.
FRANK, A.C.J., and FULMER, J., concur.
NOTES
[1] It is likely that these four defendants will file motions to suppress evidence upon remand. We caution the trial court that each defendant must prove that he has standing to challenge the search and that the trial court's determination of the standing issue must be supported by the evidence, not merely from counsel's representations of facts not contained in the record. See State v. T.A., 528 So.2d 974 (Fla. 2d DCA 1988). For instance, Gibson's attorney argued that Gibson had standing because the premises searched was a private club. There was no evidence in the record to support this assertion. Torres's counsel merely stated that Torres would be able to testify that his premises was a private club. This was not evidence. We further caution the trial court that each defendant must prove that he had a reasonable expectation of privacy in the premises searched. See Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The fact that a person legally possessed an item seized during an illegal search does not necessarily constitute a Fourth Amendment deprivation. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); see also Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
[2] Our review of the motion leads us to the conclusion that it was legally insufficient because it did not state the particular evidence sought to be suppressed, as Florida Rule of Criminal Procedure 3.190(h)(2) requires. The trial court failed to determine the motion's legal sufficiency, as Florida Rule of Criminal Procedure 3.190(h)(3) mandates, and the state never raised this issue. We, therefore, should not reverse on a matter which the parties did not present to the trial court for a ruling. See State v. Hinton, 305 So.2d 804, 808 n. 2 (Fla. 4th DCA 1975). We further determine that this did not constitute fundamental error. Cf. State v. Townsend, 635 So.2d 949 (Fla.1994) (court's failure to make specific findings mandated by section 90.803(23), Florida Statutes (1987), is not fundamental error). We are aware of the concurring opinion in State v. McCray, 626 So.2d 1017, 1019-20 (Fla. 2d DCA 1993) (Parker, J., concurring), and decline to adopt that position.