NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MATTHEW WILLIS,                    )
                                   )
          Appellant,               )
                                   )
v.                                 )          Case No. 2D13-3981
                                   )
STATE OF FLORIDA,                  )
                                   )
          Appellee.                )
_____)

Opinion filed September 19, 2014.

Appeal from the Circuit Court for Polk
County; John E. Kirkland, Acting Circuit
Judge, and Glenn T. Shelby, Judge.

Howard L. Dimmig, II, Public Defender,
and Bruce P. Taylor, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Helene S. Parnes,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

          Matthew Willis appeals his judgments and sentences for twenty counts of

possession of child pornography.  The images were found on his cell phone during what

began as a traffic stop in February 2012.  Although at the time of the stop the

warrantless search for these photographs was permissible under the First District's

decision in Smallwood v. State, 61 So. 3d 448 (Fla. 1st DCA 2011) (Smallwood I), that decision was reversed by the supreme court in Smallwood v. State, 113 So. 3d 724 (Fla. 2013) (Smallwood II). Moreover, the United States Supreme Court reached a decision similar to our supreme court's decision in Riley v. California, 134 S. Ct. 2473 (2014). In light of the supreme court's discussion of the good-faith exception in Smallwood II, we conclude that we must reverse the trial court's decision and require that all of the photographs be suppressed from evidence. Thus, we reverse the judgments and sentences. On remand these twenty counts must be dismissed.

A Haines City police officer stopped a Ford pickup truck on the evening of February 7, 2012, because the truck's tag light was broken. Mr. Willis, the owner of the vehicle, was driving. He had two passengers with him. During the stop, the officer discovered that Mr. Willis's license was suspended. He arrested Mr. Willis for driving while license suspended and placed him in his patrol car. Additional officers arrived at the scene and decided to tow the vehicle. After removing the two passengers from the vehicle, the officers conducted an inventory search. They unlocked the glove box and found two pill boxes with small amounts of bagged marijuana and methamphetamine inside. They also found an electronic scale inside the vehicle. The name of one of the passengers was written on one of the pill bottles. The officers then arrested this passenger and Mr. Willis for possession of cannabis and methamphetamine and possession with intent to sell.

Before Mr. Willis and the passenger were transported for booking, Mr. Willis asked the officers to retrieve his cell phone from his truck. The officer who retrieved the cell phone looked through the contents of the phone expecting to find

evidence related to drug dealing. In the process, he came upon numerous pictures of child pornography.

The officers then applied for a search warrant to examine the contents of Mr. Willis's phone. They requested the right to search the telephone call logs and archived telephone numbers, email, text messages, and photographs for evidence of drug crimes and children involved in sexual conduct. The affidavit in support of the application stated that an inventory was conducted, during which time officers found marijuana and methamphetamine. The affidavit explained that the officer who retrieved Mr. Willis's phone initially looked through it "to determine ownership" and that a second officer then accessed "a folder with approximately 3,193 photos" of children that the officers had already viewed. The magistrate issued the warrant to obtain this evidence.

The affidavit did not mention that Mr. Willis had two passengers in the vehicle with him; that the name of one of the passengers was written on a pill bottle containing the marijuana and methamphetamine; that the officers arrested this passenger, along with Mr. Willis, for possession and possession with intent to sell; or that the officers found a scale inside the truck.

The State filed an information charging forty counts of possession of child pornography and one count of driving while license suspended. The State did not file drug charges against Mr. Willis. Mr. Willis filed a motion to suppress the evidence obtained from the cell phone. When that motion was denied, he agreed to plead nolo contendere to twenty counts of possession of child pornography in exchange for concurrent sentences of six years' imprisonment followed by six years' probation as a

sexual offender. He also reserved the right to appeal the denial of his dispositive motion to suppress.

In the trial court, the suppression hearing focused significantly on whether the warrantless search exceeded the scope of the search incident to arrest permitted under Arizona v. Gant, 566 U.S. 332 (2009). Because the police obtained possession of this cell phone at Mr. Willis's request to retrieve it for him, we agree with the trial court that it was not seized under the Fourth Amendment. However, Mr. Willis also argued that the police could not constitutionally search its content without a warrant.

On appeal, Mr. Willis argues that the evidence acquired from the cell phone during the warrantless search and the additional evidence acquired after the police obtained a warrant must be suppressed. The State primarily argues that the evidence acquired by warrant is admissible.

In light of the holdings in Smallwood II and Riley, we conclude that the evidence obtained prior to the search warrant must be suppressed. In Smallwood II, the Florida Supreme Court held that law enforcement is required to obtain a search warrant before searching the data and content of a cell phone that has been seized incident to a lawful arrest. 113 So. 3d at 727, 735. The court further held that the good-faith exception to the exclusionary rule does not apply to cell phone searches incident to arrest performed prior to Smallwood I because no "bright-line rule" existed from the United States Supreme Court on which law enforcement could then reasonably rely. Id. at 738-39. After Smallwood II was decided, the United States Supreme Court similarly held in Riley that a warrant is required to search a cell phone seized incident to a lawful arrest. 134 S. Ct. at 2493.

- 4 -

We recognize that at the time it occurred, the warrantless search of the cell phone here was permitted by the First District's recent decision in Smallwood I, which was a decision then binding on all Florida trial courts. See Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992). As discussed in Smallwood II, the Supreme Court held in Davis v. United States, 131 S. Ct. 2419, 2434 (2011), that "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." The case law is still developing on the type of precedent that qualifies as "binding appellate precedent" that is sufficient to permit "objectively reasonable reliance." Compare United States v. Robinson, 903 F. Supp. 2d 766 (E.D. Mo. 2012) (limiting the applicable precedent to Supreme Court and federal circuit court decisions), with United States v. Lopez, 951 F. Supp. 2d 657 (D. Del. 2013) (declining to follow Robinson).[1]

The rule in Pardo was created to establish consistency within Florida law in light of our unique system in which the intermediate appellate courts are intended to be the normal final courts of review. See, e.g., John M. Scheb, Florida's Courts of Appeal: Intermediate Courts Become Final, 13 Stetson L. Rev. 479, 480 (1984). But an opinion from a single district court is not binding on another district court in Florida. We

---

[1]A Texas court applying Davis has declined to use the exclusionary rule as a remedy for an improper search of a cell phone in which law enforcement found photographs that were relevant to prove a drug charge. United States v. Spears, No. 4:14-cr-82-O, 2014 WL 3407930, at *3-4 (N.D. Tex. July 14, 2014). In that case, the search had been authorized under existing precedent from the Fifth Circuit allowing the warrantless search of an arrestee's cell phone incident to a lawful arrest. Id. at *3 (citing United States v. Finley, 477 F.3d 250, 259-60 (5th Cir. 2007)). The State has not asked this court to rely on this out-of-state precedent. As explained in the opinion, we conclude that a Florida district court case from another district is not the same kind of binding precedent as a Fifth Circuit case in Texas.

are not inclined to believe that the rule announced in Pardo should be used in the Fourth Amendment context to determine whether evidence from a warrantless search is admissible.

There was no decision on this issue from either the Florida Supreme Court or the United States Supreme Court at the time of the search, and the issue of cell phone searches was clearly an open and unresolved legal issue in 2012. In light of the discussion in Smallwood II, despite Judge Morris's reasoned dissent, we are not convinced that our supreme court intends for one recent decision from another Florida district court of appeal on such a controversial issue to create "binding precedent," at least in other districts, for purposes of the good-faith exception as announced in Davis. See Smallwood II, 113 So. 3d at 739. Thus, without faulting the officers involved, we conclude that the State cannot rely upon the good-faith exception to prevent the exclusion of this evidence.[2]

Distinct from the Davis argument, the State briefly suggests that Smallwood II and Riley should have prospective application only. It relies on the First District's decision in State v. O'Steen, 238 So. 2d 434, 437 (Fla. 1st DCA 1970). O'Steen involved a search incident to arrest that occurred prior to the decision in

---

[2]It should be noted that Smallwood I was pending on review in the Florida Supreme Court when this cell phone was searched. See Smallwood v. State, 68 So. 3d 235 (Fla. 2011) (table decision). There is nothing in the record to establish that the officers in this case actually knew about the holding in the First District and that they were relying on that holding. The exclusionary rule does serve, at least in substantial part, as a deterrent. However, when a Fourth Amendment issue is rapidly evolving, it is hard to justify an approach to the good-faith exception that allows the first defendant to reach the United States Supreme Court to receive the benefit of the exclusionary rule while other defendants in the legal pipeline do not. The equal application of the rule of law would seem to be a principle of our legal system calling for a cautious use of the good-faith exception in situations like the one we face today.

Chimel v. California, 395 U.S. 752 (1969). Chimel was a case in which the United States Supreme Court confronted at least two of its own prior decisions and attempted to create a more predictable rule. We conclude that the circumstances that warranted a prospective approach to the holding in Chimel simply do not exist in this case.[3]

Concerning the evidence obtained under the warrant, there is an obvious problem with the fruit of the poisonous tree. See Grant v. State, 978 So. 2d 862, 863 (Fla. 2d DCA 2008) (citing Wong Sun v. United States, 371 U.S. 471, 488 (1963)). The statements in the affidavit for this search warrant relating to the initial search of the cell phone cannot be considered in the determination of whether probable cause existed to obtain the search warrant. State v. Gibson, 670 So. 2d 1006, 1009 (Fla. 2d DCA 1996) (citing State v. Ward, 407 So. 2d 353 (Fla. 2d DCA 1981)). If the information in the affidavit used to obtain the warrant is edited to eliminate all reference to the knowledge obtained by the unauthorized search of the cell phone, the magistrate would have been informed only that the cell phone belonged to Mr. Willis, whose vehicle contained a limited quantity of drugs, and that the police had not done any prior or subsequent investigation to establish his involvement with the drugs. In that revised situation, we assume that the officers would also have included within the affidavit that the drugs were found inside a locked glove compartment in pill bottles bearing the name of one of Mr. Willis's passengers. We seriously doubt that such information would be sufficient even to obtain a preliminary warrant to search the record of recent telephone calls or text messages to seek out buyers or sellers of drugs. Such an affidavit clearly would

---

[3]O'Steen was decided before United States v. Leon, 468 U.S. 897 (1984), Hudson v. Michigan, 547 U.S. 586 (2006), and Riley. The analysis it used has probably been replaced by the analysis in these more recent cases.

not have provided probable cause to search the personal photographs on Mr. Willis's cell phone. Accordingly, to the extent that the evidence includes photographs discovered after the issuance of the warrant, those photos must also be suppressed.

In light of the arguments well presented in the dissent, and in recognition that the rule in Davis needs a consistent statewide application under Florida's unique court structure, we certify the following question as a question of great public importance:

> IN LIGHT OF PARDO V. STATE, 596 SO. 2D 665, 666 (FLA. 1992), IS A SINGLE RECENT CASE FROM A DISTRICT COURT OF APPEAL, WHICH IS PENDING ON REVIEW IN THE SUPREME COURT, "BINDING APPELLATE PRECEDENT" UPON WHICH OFFICERS MAY OBJECTIVELY RELY FOR PURPOSES OF THE GOOD FAITH EXCEPTION DISCUSSED IN DAVIS V. UNITED STATES, 131 S. CT. 2419, 2434 (2011)?

> Reversed and remanded.

CASANUEVA, J., Concurs.
MORRIS, J., Dissents with opinion.

MORRIS, Judge, Dissenting.

I respectfully dissent from the majority opinion in this case.

There is no question that the law enforcement officers were in lawful possession of Mr. Willis's cell phone as he had given consent for them to retrieve it. The question here is whether the subsequent search of the contents of the cell phone falls under the good-faith exception to the exclusionary rule. At the time of the search, the only Florida case addressing cell phone searches which was then binding on all Florida trial courts was the First District's opinion in Smallwood I, 61 So. 3d 448. See

<u>Pardo</u>, 596 So. 2d at 666 ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts."). <u>Smallwood I</u> held that a search of a cell phone incident to a lawful arrest was not a violation of the Fourth Amendment. 61 So. 3d at 459.

Subsequent to the search involved in this case, the Florida Supreme Court quashed the First District's opinion, holding that law enforcement officers are required to obtain a search warrant before searching the contents of a cell phone that has been seized incident to a lawful arrest. <u>Smallwood II</u>, 113 So. 3d 724. And following <u>Smallwood II</u>, the United States Supreme Court issued its opinion in <u>Riley</u>, 134 S. Ct. 2473, wherein it reached the same holding. The majority holds that pursuant to <u>Smallwood II</u> and <u>Riley</u>, the search here resulted in a Fourth Amendment violation and that under <u>Smallwood II</u>, the evidence obtained as a result of that search should be excluded because it is not subject to the good-faith exception to the exclusionary rule.[4]

I conclude, however, that the majority's reliance on <u>Smallwood II</u> is misplaced. First, the <u>Smallwood</u> cases can be distinguished from this case because at the time <u>Smallwood I</u> was decided, there were no cases from a Florida district court dealing with the issue of cell phone content searches. Thus the <u>Pardo</u> principle did not apply. But here, at the time of the search, <u>Smallwood I</u> existed as the only district court decision on the issue in Florida and, therefore, <u>Pardo</u> is applicable.

---

[4]The majority's reliance on <u>Riley</u> is based on the substantive Fourth Amendment issue. The issue of whether officers are entitled to rely on case law, which is later overruled, as a basis for the good-faith exception to apply was not raised in <u>Riley</u>.

Second, I believe that the court in Smallwood II interpreted too narrowly the good-faith exception as analyzed in Davis. The State argued in Smallwood II that the good-faith exception to the warrant requirement should apply pursuant to Davis, but the court rejected that argument because "there [was] currently no United States Supreme Court precedent that addresses or expressly permits a search of the data, information, and content of a cellular phone under the search-incident-to-arrest warrant exception." Smallwood II, 113 So. 3d at 739. The court distinguished Davis on the basis that it involved a "bright-line rule" involving the search of a vehicle's passenger compartment, whereas in Smallwood, "*no bright-line rule exist[ed]* for law enforcement officers to rely upon with regard to searches under these facts." Id.

Although the court in Smallwood II focused on the lack of a "bright-line rule" or, more specifically, United States Supreme Court precedent, in deciding that the good-faith exception did not apply, Davis established no such requirement for application of the good-faith exception. In fact, in Davis, the relevant precedent being relied upon was an Eleventh Circuit case that had relied on United States Supreme Court precedent. Davis, 131 S. Ct. at 2426. Thus the issue in Davis was not whether there existed United States Supreme Court precedent, or even a "bright-line rule." Rather, the issue was whether the good-faith exception should apply where law enforcement had reasonably relied on binding precedent.[5]

---

[5]Of course, Smallwood II did not involve the factual scenario presented here, i.e., the search was conducted at a time when there was a single Florida district court case addressing the issue. Thus the Florida Supreme Court was not presented with the question of whether, under such circumstances, that single opinion would be the equivalent of a "bright-line rule."

As noted by the majority, the holding of <u>Davis</u> was that "when the police conduct a search in objectively reasonable reliance on *binding appellate precedent*, the exclusionary rule does not apply." <u>Id.</u> at 2434 (emphasis added). And while the majority is correct that there is a split in the case law as to what constitutes "binding appellate precedent," I do not believe that the Supreme Court's utilization of that term prevents the application of the good-faith exception to cases such as this one where, at the time of the search, there was only one Florida district court opinion addressing the issue. Indeed, by adopting the holding that the good-faith exception cannot apply because there was no decision from the Florida or United States Supreme Courts at the time of the search, the majority nullifies the holding of <u>Pardo</u> in cases involving facts like the present case and ignores the extensive analysis in <u>Davis</u> as to both the purpose and reach of the good-faith exception. It is also important to note that when referring to the type of case law on which law enforcement officers could reasonably rely, the Supreme Court used the terms "binding precedent" and "binding appellate precedent" interchangeably. <u>Davis</u>, 131 S. Ct. at 2423-24, 2428-29, 2432, 2434. That fact, in conjunction with the Supreme Court's analysis of the good-faith exception, leads me to conclude that the good-faith exception should apply in this case.

In <u>Davis</u>, the Supreme Court emphasized that the exclusionary rule is " 'not a personal constitutional right' " but instead is a " 'judicially created' sanction" designed to "deter future Fourth Amendment violations." 131 S. Ct. at 2433-34 (quoting <u>Stone v. Powell</u>, 428 U.S. 465, 486 (1976)); <u>see also</u> <u>Illinois v. Krull</u>, 480 U.S. 340, 347 (1987) ("Application of the exclusionary rule 'is neither intended nor able to cure "the invasion of the defendant's rights which he has already suffered." ' " (quoting <u>United</u>

- 11 -

States v. Leon, 468 U.S. 897, 906 (1984))).  In explaining why exclusion does not automatically follow a Fourth Amendment violation, the Supreme Court noted the societal costs that result from applying the exclusionary rule:

> Exclusion exacts a heavy toll on both the judicial system and society at large.  It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence.  And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment.  Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort.  For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.

Davis, 131 S. Ct. at 2427.  Conversely, the Court explained that exclusion is unwarranted where it "fails to yield 'appreciable deterrence.' " Id. at 2426-27 (quoting United States v. Janus, 428 U.S. 433, 454 (1976)).

The Supreme Court then analyzed the types of situations in which deterrence would be most effective.  Citing its earlier opinion in Leon, the Supreme Court differentiated between police conduct that was "deliberate," "reckless," or "grossly negligent," for which "the deterrent value of exclusion is strong," and police conduct based on an "objectively reasonable good-faith belief that their conduct is lawful" or conduct involving "only simple, isolated negligence," for which "the deterrence rationale loses much of its force." Davis, 131 S. Ct. at 2427-28 (internal quotation marks omitted).  Because the law enforcement officers in Davis had "acted in strict compliance with binding precedent" (i.e., an Eleventh Circuit case), the Supreme Court concluded that their behavior "was not culpable in any way." Id. at 2428 (citation omitted).  The Court went on to elaborate that where a particular practice is authorized by binding appellate precedent, "[a]n officer who conducts a search in reliance on [that] precedent

does no more than ac[t] as a reasonable officer would and should act under the circumstances" and thus exclusion in such a case would only work to "discourage the officer from do[ing] his duty [which] is not the kind of deterrence the exclusionary rule seeks to foster." Id. at 2429 (third and fourth alterations in original) (citations omitted). That deterrence rationale has been repeated time and time again in United States Supreme Court decisions. See, e.g., Herring v. United States, 555 U.S. 135, 141-46 (2009); Arizona v. Evans, 514 U.S. 1, 10-14 (1995); Krull, 480 U.S. at 347-52; Leon, 468 U.S. at 918-19; United States v. Calandra, 414 U.S. 338, 347-54 (1974).[6]

This is exactly the type of case for which deterrence has little value. The officers were complying with the only Florida case addressing the issue (Smallwood I), which according to Pardo was binding on *all* trial courts until it was later reversed in Smallwood II. That is far from the "deliberate," "reckless," or "grossly negligent" conduct for which the exclusionary rule has a deterrent effect. See Davis, 131 S. Ct. at 2427-28. Thus, my reading of Davis leads me to conclude that Smallwood I was "binding precedent" on which the officers could reasonably rely and that, therefore, the good-faith exception is applicable to this case.

The majority's efforts to circumvent Pardo are unpersuasive. The majority notes that an opinion from a single district court is not binding on another district court in Florida. But that is not the issue here. Here, the issue is whether the good-faith

_____

[6]The Florida Supreme Court has likewise noted that deterrence is the primary purpose behind the exclusionary rule. See State v. Teamer, 39 Fla. L. Weekly S478, S481 (Fla. July 3, 2014). The court also acknowledged Davis's holding that the good-faith exception applies "where police acted in objectively reasonable reliance on binding judicial precedent." Id.

- 13 -

exception applies where law enforcement officers in Florida objectively reasonably relied on the single Florida district court case addressing a Fourth Amendment issue.

The majority's approach essentially carves out an exception to Pardo for cases involving Fourth Amendment issues. But there is nothing in Pardo which precludes its application in Fourth Amendment case law. Further, under the majority's approach, if a single Florida district court decided in the first instance that a particular action violated the Fourth Amendment, then law enforcement officers in that district would have to either refrain from engaging in such conduct or face the prospect of having evidence suppressed, whereas law enforcement officers in other districts could freely engage in that conduct without fear of having evidence suppressed. That, in my opinion, is an absurd result. I conclude then that because Smallwood I was the only Florida district court case which addressed the issue at the time of the search, the officers were not only entitled to rely on it pursuant to Pardo, they were bound by duty to follow it. See Davis, 131 S. Ct. at 2429 (noting that officers who rely on binding precedent are acting as reasonable officers would and should under the circumstances). It is simply unreasonable to judge the constitutionality of the search on a standard which did not exist. Indeed, "[w]hen the police comply with authoritative precedent, only to see the law evolve after the fact, there is nothing to deter; the police cannot modify their conduct to accord with cases not yet decided." United States v. Sparks, 711 F.3d 58, 63 (1st Cir. 2013) (citing Davis, 131 S. Ct. at 2428-28).

The majority summarily rejects the State's argument that Smallwood II and Riley should have prospective application only by concluding that "the circumstances that warranted a prospective approach to the holding in Chimel [v. California, 395 U.S.

- 14 -

752 (1969)], simply do not exist in this case."  I do not take issue with the conclusion that the new rule of law announced in Smallwood II and Riley should apply retroactively. But, as explained in Davis, the retroactive application of that rule of law is not dispositive of whether the good-faith exception applies.

There, the Supreme Court acknowledged that it previously held in Griffith v. Kentucky, 479 U.S. 314 (1987), that "newly announced rules of constitutional criminal procedure must apply 'retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.' "  Davis, 131 S. Ct. at 2430 (quoting Griffith, 479 U.S. at 328).  However, the Court explained that the application of the good-faith exception and the issue of retroactive application were two distinct doctrines: "retroactive application of a new rule of substantive Fourth Amendment law *raises* the question whether a suppression remedy applies; it does not answer that question."  Id. at 2431.  The Court held that its decision in Gant, 556 U.S. 332, would apply to Davis's case because his conviction was not final on direct review at the time Gant was decided.  Davis, 131 S. Ct. at 2431.  However, while Davis was entitled to invoke the new rule of law as announced in Gant as a basis for seeking relief, the Supreme Court made it clear that the issue of whether he was entitled to a remedy was a separate issue and that a remedy only applied where its purpose could be " 'effectively advanced.' "  Id. (quoting Krull, 480 U.S. at 347).  The Supreme Court ultimately concluded that the good-faith exception was "an established limit on the *remedy* of exclusion" and that "[i]ts application . . . neither contravene[d] Griffith nor denie[d] retroactive effect to Gant."  Id.

Similarly here, while Willis was entitled to challenge the validity of the search based upon <u>Smallwood II</u> and <u>Riley</u>, that fact does not answer the question of whether he is entitled to a remedy. And for the reasons I have already explained, I would conclude that he is not because the good-faith exception to the exclusionary rule applies to this case.

For these reasons, I would affirm.