ALTENBERND, Judge.
Matthew Willis appeals his judgments and sentences for twenty counts of possession of child pornography. The images were found on his cell phone during what began as a traffic stop in February 2012. Although at the time of the stop the war-rantless search for these photographs was permissible under the First District’s decision in Smallwood v. State, 61 So.Sd 448 (Fla. 1st DCA 2011) (Smallwood I), that decision was reversed by the supreme court in Smallwood v. State, 113 So.3d 724 (Fla.2013) (Smallwood II). Moreover, the United States Supreme Court reached a decision similar to our supreme court’s decision in Riley v. California, — U.S. -, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014). In light of the supreme court’s discussion of the good-faith exception in Smallwood II, we conclude that we must reverse the trial court’s decision and require that all of the photographs be suppressed from evidence. Thus, we reverse the judgments and sentences. On remand these twenty counts must be dismissed.
A Haines City police officer stopped a Ford pickup truck on the evening of February 7, 2012, because the truck’s tag light was broken. Mr. Willis, the owner of the vehicle, was driving. He had two passengers with him. During the stop, the officer discovered that Mr. Willis’s license was suspended. He arrested Mr. Willis for driving while license suspended and placed him in his patrol car. Additional officers arrived at the scene and decided to tow the vehicle. After removing the two passengers from the vehicle, the officers conducted an inventory search. They unlocked the glove box and found two pill boxes with small amounts of bagged marijuana and methamphetamine inside. They also found an electronic scale inside the vehicle. The name of one of the passengers was written on one of the pill bottles. The officers then arrested this passenger and Mr. Willis for possession of cannabis and methamphetamine and possession with intent to sell.
Before Mr. Willis and the passenger were transported for booking, Mr. Willis asked the officers to retrieve his cell phone from his truck. The officer who retrieved the cell phone looked through the contents of the phone expecting to find evidence related to drug dealing. In the process, he came upon numerous pictures of child pornography.
The officers then applied for a search warrant to examine the contents of Mr. Willis’s phone. They requested the right to search the telephone call logs and archived telephone numbers, email, text messages, and photographs for evidence of drug crimes and children involved in sexual conduct. The affidavit in support of the application stated that an inventory was conducted, during which time officers found marijuana and methamphetamine. The affidavit explained that the officer who retrieved Mr. Willis’s phone initially looked through it “to determine ownership” and that a second officer then accessed “a folder with approximately 3,193 photos” of children that the officers had already viewed. The magistrate issued the warrant to obtain this evidence.
The affidavit did not mention that Mr. Willis had two passengers in the vehicle with him; that the name of one of the passengers was written on a pill bottle containing the marijuana and methamphetamine; that the officers arrested this passenger, along with Mr. Willis, for posses *482 sion and possession with intent to sell; or that the officers found a scale inside the truck.
The State filed an information charging forty counts of possession of child pornography and one count of driving while license suspended. The State did not file drug charges against Mr. Willis. Mr. Willis filed a motion to suppress the evidence obtained from the cell phone. When that motion was denied, he agreed to plead nolo contendere to twenty counts of possession of child pornography in exchange for concurrent sentences of six years’ imprisonment followed by six years’ probation as a sexual offender. He also reserved the right to appeal the denial of his dispositive motion to suppress.
In the trial court, the suppression hearing focused significantly on whether the warrantless search exceeded the scope of the search incident to arrest permitted under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Because the police obtained possession of this cell phone at Mr. Willis’s request to retrieve it for him, we agree with the trial court that it was not seized under the Fourth Amendment. However, Mr. Willis also argued that the police could not constitutionally search its content without a warrant.
On appeal, Mr. Willis argues that the evidence acquired from the cell phone during the warrantless search and the additional evidence acquired after the police obtained a warrant must be suppressed. The State primarily argues that the evidence acquired by warrant is admissible.
In light of the holdings in Smallwood II and Riley, we conclude that the evidence obtained prior to the search warrant must be suppressed. In Smallwood II, the Florida Supreme Court held that law enforcement is required to obtain a search warrant before searching the data and content of a cell phone that has been seized incident to a lawful arrest. 113 So.3d at 727, 735. The court further held that the good-faith exception to the exclusionary rule does not apply to cell phone searches incident to arrest performed pri- or to Smallwood I because no “bright-line rule” existed from the United States Supreme Court on which law enforcement could then reasonably rely. Id. at 738-39. After Smallwood II was decided, the United States Supreme Court similarly held in Riley that a warrant is required to search a cell phone seized incident to a lawful arrest. 134 S.Ct. at 2493.
We recognize that at the time it occurred, the warrantless search of the cell phone here was permitted by the First District’s recent decision in Smallwood I, which was a decision then binding on all Florida trial courts. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992). As discussed in Smallwood II, the Supreme Court held in Davis v. United States, — U.S. -, 131 S.Ct. 2419, 2434, 180 L.Ed.2d 285 (2011), that “when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply.” The case law is still developing on the type of precedent that qualifies as “binding appellate precedent” that is sufficient to permit “objectively reasonable reliance.” Compare United States v. Robinson, 903 F.Supp.2d 766 (E.D.Mo.2012) (limiting the applicable precedent to Supreme Court and federal circuit court decisions), with United States v. Lopez, 951 F.Supp.2d 657 (D.Del.2013) (declining to follow Robinson ).[1]
*483 The rule in Pardo was created to establish consistency within Florida law in light of our unique system in which the intermediate appellate courts are intended to be the normal final courts of review. See, e.g., John M. Scheb, Florida’s Courts of Appeal: Intermediate Courts Become Final, 13 Stetson L. Rev. 479, 480 (1984). But an opinion from a single district court is not binding on another district court in Florida. We are not inclined to believe that the rule announced in Pardo should be used in the Fourth Amendment context to determine whether evidence from a warrantless search is admissible.
There was no decision on this issue from either the Florida Supreme Court or the United States Supreme Court at the time of the search, and the issue of cell phone searches was clearly an open and unresolved legal issue in 2012. In light of the discussion in Smallwood II, despite Judge Morris’s reasoned dissent, we are not convinced that our supreme court intends for one recent decision from another Florida district court of appeal on such a controversial issue to create “binding precedent,” at least in other districts, for purposes of the good-faith exception as announced in Davis. See Smallwood II, 113 So.3d at 739. Thus, without faulting the officers involved, we conclude that the State cannot rely upon the good-faith exception to prevent the exclusion of this evidence.[2]
Distinct from the Davis argument, the State briefly suggests that Smallwood II and Riley should have prospective application only. It relies on the First District’s decision in State v. O’Steen, 238 So.2d 434, 437 (Fla. 1st DCA 1970). O’Steen involved a search incident to arrest that occurred prior to the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Chimel was a case in which the United States Supreme Court confronted at least two of its own prior decisions and attempted to create a more predictable rule. We conclude that the circumstances that warranted a prospective approach to the holding in Chimel simply do not exist in this case.[3]
Concerning the evidence obtained under the warrant, there is an obvious problem *484 with the fruit of the poisonous tree. See Grant v. State, 978 So.2d 862, 868 (Fla. 2d DCA 2008) (citing Wong Sun v. United States, 371 U.S. 471, 488, 88 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The statements in the affidavit for this search warrant relating to the initial search of the cell phone cannot be considered in the determination of whether probable cause existed to obtain the search warrant. State v. Gibson, 670 So.2d 1006, 1009 (Fla. 2d DCA 1996) (citing State v. Ward, 407 So.2d 353 (Fla. 2d DCA 1981)). If the information in the affidavit used to obtain the warrant is edited to eliminate all reference to the knowledge obtained by the unauthorized search of the cell phone, the magistrate would have been informed only that the cell phone belonged to Mr. Willis, whose vehicle contained a limited quantity of drugs, and that the police had not done any prior or subsequent investigation to establish his involvement with the drugs. In that revised situation, we assume that the officers would also have included within the affidavit that the drugs were found inside a locked glove compartment in pill bottles bearing the name of one of Mr. Willis’s passengers. We seriously doubt that such information would be sufficient even to obtain a preliminary warrant to search the record of recent telephone calls or text messages to seek out buyers or sellers of drugs. Such an affidavit clearly would not have provided probable cause to search the personal photographs on Mr. Willis’s cell phone. Accordingly, to the extent that the evidence includes photographs discovered after the issuance of the warrant, those photos must also be suppressed.
In light of the arguments well presented in the dissent, and in recognition that the rule in Davis needs a consistent statewide application under Florida’s unique court structure, we certify the following question as a question of great public importance:
IN LIGHT OF PARDO V. STATE, 596 So.2d 665, 666 (Fla.1992), IS A SINGLE RECENT CASE FROM A DISTRICT COURT OF APPEAL, WHICH IS PENDING ON REVIEW IN THE SUPREME COURT, “BINDING APPELLATE PRECEDENT” UPON WHICH OFFICERS MAY OBJECTIVELY RELY FOR PURPOSES OF THE GOOD FAITH EXCEPTION DISCUSSED IN DAVIS V. UNITED STATES, — U.S.-, 131 S.Ct. 2419, 2434,180 L.Ed.2d 285 (2011)?
Reversed and remanded.
CASANUEVA, J., Concurs.
MORRIS, J., Dissents with opinion.

. A Texas court applying Davis has declined to use the exclusionary rule as a remedy for an improper search of a cell phone in which law enforcement found photographs that *483 were relevant to prove a drug charge. United States v. Spears, No. 4:14-cr-82-0, - F.Supp.3d-, -, 2014 WL 3407930, at *3-4 (N.D.Tex. July 14, 2014). In that case, the search had been authorized under existing precedent from the Fifth Circuit allowing the warrantless search of an arrestee’s cell phone incident to a lawful arrest. Id. at-, at *3 (citing United States v. Finley, 477 F.3d 250, 259-60 (5th Cir.2007)). The State has not asked this court to rely on this out-of-state precedent. As explained in the opinion, we conclude that a Florida district court case from another district is not the same kind of binding precedent as a Fifth Circuit case in Texas.

. It should be noted that Smallwood I was pending on review in the Florida Supreme Court when this cell phone was searched. See Smallwood v. State, 68 So.3d 235 (Fla.2011) (table decision). There is nothing in the record to establish that the officers in this case actually knew about the holding in the First District and that they were relying on that holding. The exclusionary rule does serve, at least in substantial part, as a deterrent. However, when a Fourth Amendment issue is rapidly evolving, it is hard to justify an approach to the good-faith exception that allows the first defendant to reach the United States Supreme Court to receive the benefit of the exclusionary rule while other defendants in the legal pipeline do not. The equal application of the rule of law would seem to be a principle of our legal system calling for a cautious use of the good-faith exception in situations like the one we face today.

. O'Steen was decided before United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), and Riley. The analysis it used has probably been replaced by the analysis in these more recent cases.