IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ROBERT BURTON,

      Appellant,

v.                                                                      Case No.  5D15-1310

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed May 20, 2016

Appeal from the Circuit Court
for Orange County,
Marc L. Lubet, Judge.

James S. Purdy, Public Defender, and
Noel A. Pelella, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Pamela J. Koller,
Assistant Attorney General, Daytona
Beach, for Appellee.


PER CURIAM.

      Robert Burton was convicted of first-degree murder and petit theft in connection

with the shooting death of Maximino Cortes. Cortes was shot four times, including fatal

shots to his neck and chest, while walking home from work on the night of December

27, 2012. While Cortes's backpack was stolen, seven hundred dollars in cash was left in

his pocket. Burton raises four issues on appeal, only one of which merits discussion. He challenges the denial of his motion to suppress evidence obtained from a warrantless search of his cell phone incident to his arrest, along with the subsequent use of that evidence during the course of his interrogation and as the basis for a warrant to search his residence and seize additional evidence. We agree that the initial search violated Burton's Fourth Amendment rights[1] but nevertheless affirm the denial of his motion to suppress evidence based on the exception to the exclusionary rule articulated by the United States Supreme Court in Davis v. United States, 564 U.S. 229, 231-32 (2011).

Following the shooting, 911 dispatch received calls from several witnesses who described a shooter roughly matching Burton's description. The initial investigation suggested the police were looking for an individual named "Tek," who resided in a nearby apartment complex. After Burton was arrested for an unrelated crime, his cell phone was seized and searched by law enforcement without a search warrant. Information on the phone indicated to police that Burton was also known as "Tek."

A digital forensics expert examined the phone and recovered additional incriminating information, including photos and deleted text messages. The text messages showed Burton asking his stepfather for .38 caliber bullets the day of the shooting, and the pictures depicted Burton posing with a .38 caliber handgun that same day. Forensic analysis of the phone also indicated that Burton had conducted an internet search for "news in Orlando" and had accessed several Orlando news websites

---

[1] The Fourth Amendment guarantees that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Amend. IV, U.S. Const.

and an article about a man shot in an Orlando-area parking lot. Prior to his arrest, Burton had attempted to delete his browsing history.

Based in part upon the information obtained from Burton's cell phone, the police obtained a search warrant for Burton's residence. While executing the warrant, police recovered a pair of bloody shoes and a hooded sweatshirt. Forensic testing of the items revealed that blood from both matched Cortes's DNA. Police also recovered from Burton's apartment an empty bullet casing fired from the same weapon as the four casings recovered from the scene of the shooting.

At trial, the State's main witness testified that he had given Burton a .38 caliber handgun the night before the murder. He further testified that on the day of the murder, he was hanging out with Burton and a few other friends, listening to music, when Cortes walked by. Burton told the group that he was going to "bust his ass"—meaning shoot Cortes. Burton then walked away and the witness heard gunshots a few minutes later. The State's witness testified that Burton admitted to shooting Cortes and taking the backpack.

The Florida Supreme Court and the U.S. Supreme Court have both recently held that police generally must obtain a warrant before searching a suspect's cell phone and may not, as a matter of course, search a phone incident to a lawful arrest. Riley v. California, 134 S. Ct. 2473, 2485 (2014); Smallwood v. State (Smallwood II), 113 So. 3d 724, 732 (Fla. 2013). Furthermore, the U.S. Supreme Court has held that its constitutional decisions apply retroactively to all cases pending on direct appeal at the time of the decision. Griffith v. Kentucky, 479 U.S. 334, 328 (1987). Therefore, Riley

3

applies retroactively, and the police violated Burton's Fourth Amendment rights in searching his phone without a warrant. Yet that determination does not end our inquiry.

In Davis, the U.S. Supreme Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 564 U.S. at 232 (emphasis added). The Court emphasized that the exclusionary rule is not a constitutional requirement, but rather a judicial creation intended to deter future Fourth Amendment violations. Id. at 236. Deterrence, though, is premised on law enforcement knowing of the culpability of its conduct, or, at a minimum, acting negligently in disregard of a risk of possible Fourth Amendment violations. Id. at 237. When the police have a reasonable, good-faith belief in the legality of their actions, deterrence can have little effect and does not merit the high cost to the legal system that accompanies the exclusion of reliable evidence. Id. at 237-39.

The Davis Court further reasoned that law enforcement has a responsibility to use all the tools at their disposal to protect the public and should not feel restrained from using formally sanctioned police practices that have withstood appellate review out of fear that the decisions authorizing those practices might later be overturned.[2] Thus, the Court held that the exclusionary rule is not an appropriate remedy for violations of a defendant's Fourth Amendment rights where the police act in good-faith reliance on binding appellate precedent. Id. at 249-50.

In this case, the trial court found that the police searched Burton's phone pursuant to a training bulletin prepared by legal counsel for the Orlando Police

---

[2] "[W]hen binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." Davis, 564 U.S. at 241.

4

Department and constituting official department policy. That guidance explained that under precedent from this Court, the police were not required to seek a warrant before searching a suspect's cell phone incident to an otherwise lawful arrest. The training bulletin was based on this Court's decision in State v. Glasco (Glasco I), 90 So. 3d 905, 908 (Fla. 5th DCA 2012) quashed by Glasco v. State (Glasco II), 137 So. 3d 1014, 1015 (Fla. 2014), which permitted such searches. Glasco I, 90 So. 3d at 908.

The issue, then, is whether reliance by the police on Glasco I constituted "objectively reasonable reliance on binding appellate precedent." As the Second District Court of Appeal noted in Willis v. State, 148 So. 3d 480, 482 (Fla. 2d DCA 2014), the law on what constitutes binding precedent is largely unsettled. See also Davis, 564 U.S. at 254 (Breyer, J., dissenting) (arguing that "to apply the term 'binding appellate precedent' often requires resolution of complex questions of degree"). The Florida Supreme Court has provided some guidance in holding that decisions from district courts of appeal "represent the law of Florida unless and until they are overruled by [the Florida Supreme Court]." Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) (quoting Stanfill v. State, 384 So. 2d 141, 143 (Fla. 1980)). Previous courts that have looked at the issue in the context of cell-phone searches have reached different conclusions.

In deciding Glasco I, this Court certified a question to the Florida Supreme Court on this issue, while review of Smallwood v. State (Smallwood I), 61 So. 3d 448, 460-61 (Fla. 1st DCA 2011), on which this Court's Glasco I decision relied, was pending with the Florida Supreme Court. The Florida Supreme Court stayed the proceedings in Glasco I pending the disposition of Smallwood II. Glasco II, 137 So. 3d at 1014. Additionally, the First District Court of Appeal, in Smallwood I, expressed serious doubts

5

about the validity of its holding given the large amount of information stored on a smart phone. See Smallwood I, 61 So. 3d at 461-62; see also Fawdry v. State, 70 So. 3d 626, 629-30 (Fla. 1st DCA 2011) (discussing competing views on the issue).

In Smallwood II, the Florida Supreme Court rejected the State's good-faith-exception argument because at the time of the search, there had been no established precedent on the issue of warrantless searches of cell phones. Smallwood II, 113 So. 3d at 738-39. In Willis, the Second District likewise invoked the exclusionary rule in suppressing evidence from a warrantless search of a cell phone, and held that in the Fourth Amendment context, precedent from another district court of appeal was not sufficient to justify the good-faith exception. Willis, 148 So. 3d at 483. The Second District noted the general rule from Pardo—that decisions by district courts of appeal in Florida are binding on all trial courts—but nevertheless held that this rule should not be extended to Fourth Amendment decisions. Willis, 148 So. 3d at 483.[3]

This case, however, is distinguishable from both Smallwood II and Willis. Here, unlike in Smallwood II and Willis, the police relied on a case from the controlling district—this Court—which addressed the issue and created a bright-line rule allowing the police to search cell phones incident to a lawful arrest. Glasco I, 90 So. 3d at 908-09. In addition, this Court's ruling was less equivocal than Smallwood I and quoted

---

[3] Burton goes further and argues that because Florida Courts are bound by the decisions of the U.S. Supreme Court interpreting the Fourth Amendment, only U.S. Supreme Court decisions can be considered "binding precedent" in Florida. See Art. I, § 12, Fla. Const. ("[The right to be free from unreasonable search and seizure] shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."). Yet Burton's argument is contrary to the nature of the Florida appellate system, in which intermediate courts of appeal serve as the final courts of review in the mine-run of cases. See Art. V, § 3, Fla. Const. (establishing limited jurisdiction for the Florida Supreme Court).

extensively from the First District's reasoning in Fawdry, which more strongly embraced the search-incident-to-arrest rationale. Glasco I, 90 So. 3d at 906-08.

We also note the First District's conclusion, in State v. Carpenter, 158 So. 3d 693, 697 (Fla. 1st DCA 2015), that the good-faith exception to the exclusionary rule applied to a warrantless search made in reliance on Smallwood I, which allowed such searches. The First District held that, unlike the situation in Smallwood II, where the police had no precedent directly on point to rely on, the police were entitled to rely on Smallwood I until it was overturned. Carpenter, 158 So. 3d at 695-96.

Following the logic of the U.S. Supreme Court in Davis, applying the exclusionary rule in this case would provide little deterrence and would come at a substantial cost to law enforcement. Smallwood I and Glasco I had established a bright-line rule, allowing for the search of cell phones incident to arrest, which the police were justified in applying. Cf. Davis, 564 U.S. at 233-35 (discussing the "simple, bright-line rule" the police had relied on in searching the defendant). Case law on the propriety of searching smart phones, even with a search warrant, as it has played out nationally, is complicated and evolving. This dynamic situation provides even more support for allowing law enforcement to rely upon the certainty of binding legal precedent establishing bright-line rules.

With the benefit of hindsight—and particularly given the current ubiquity of smart phones—the results in Riley and Smallwood II may seem to have been inevitable. Yet at the time, the police had no reason to believe, and could not have predicted, that our decision would later be overturned. The police are not required to second guess this Court's holdings to determine which of them are most likely to withstand further review,

7

nor should the possibility that our decision may later be overturned foreclose them from using a procedure explicitly endorsed by this Court.

We find that the police acted reasonably in relying on binding precedent from this Court in searching Burton's cell phone incident to his arrest. The trial court properly denied Burton's motion to exclude the information recovered from Burton's cell phone for use during his interrogation and as the basis for a search warrant for his residence. Accordingly, we affirm his conviction.

AFFIRMED.

PALMER, COHEN and BERGER, JJ., concur.