REVISED OPINION LEWIS, J. Christopher L. Carpenter seeks review of the decision of the First District Court of Appeal in State v. Carpenter, 158 So.3d 693 (Fla. 1st DCA 2015), on the basis that it expressly and directly conflicts with the decision of the Second District Court of Appeal in Willis v. State, 148 So.3d 480 (Fla. 2d DCA 2014), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. FACTS AND BACKGROUND On April 2, 2013, Carpenter was charged with one count of traveling to meet a minor to commit an unlawful sex act, one count of soliciting a minor to commit an unlawful sex act, and three counts of transmission of material harmful to a minor. At the time of the incident, law enforcement already had extensive evidence that Carpenter, who was twenty-eight years old, had engaged, through e-mail and text message, in a series of sexually explicit conversations in response to. a Craigslist ad with an undercover officer posing as a fourteen-year-old girl. These conversations ultimately resulted in Carpenter and the undercover officer planning to meet. Upon his arrival at the agreed-upon address, officers arrested Carpenter. At the time of Carpenter’s arrest, the arresting officers conducted a search incident to arrest and seized his cell phone, separating Carpenter from the cell phone. These officers then transported the cell phone in a special protective covering to a specialty technician who later entered into and searched the phone at a distant location without first obtaining a warrant. Sexually explicit text messages and photos were found on the seized cell phone. Carpenter filed a motion to suppress the evidence found on his cell phone, relying on Smallwood v. State (Smallwood II), 113 So.3d 724 (Fla. 2013), to support his assertion that the warrantless search of his cell phone violated his Fourth Amendment rights. At the suppression hearing, Investigator Josh Scioners testified that he performed the forensic examination of Carpenter’s cell phone. Scioners also testified that cell phones present issues with regard to the potential for the contents to be removed or destroyed remotely, thus necessitating turning off the device or using a Faraday bag, which blocks any signals from coming in or out of the device. While Faraday bags do help prevent the cell phone’s data from being remotely erased, these bags are not a guaranteed method of data protection and the cell phone still must be removed from the Faraday bag to be examined, risking that the data be compromised. Investigator Scioners further testified that he relied on Smallwood v. State (Smallwood I), 61 So.3d 448 (Fla. 1st DCA 2011), when he searched Carpenter’s phone. He did, however, note that it would have taken a short time to obtain a warrant and that Carpenter would likely not have had the opportunity to make any calls while he was detained in the patrol car or initially transported to the station. After the suppression .hearing, the trial court granted Carpenter’s motion to suppress, relying on the holding in Smallwood II that warrantless cell phone searches are unconstitutional/ The First District reversed, relying on Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), to support the position that, because the officers were relying in good faith on the holding in Smallwood I, the appellate precedent at the time of the search, the evidence recovered from Carpenter’s cell phone was not subject to the exclusionary rule because the good-faith exception applied.[1] Carpenter, 158 So.3d at 697. This review follows. ANALYSIS In Davis, the United States Supreme Court announced the application of the good-faith exception to the exclusionary rule' in cases where officers have reasonably relied on binding appellate precedent when conducting a search, even when that appellate precedent is later overruled and the search is deemed to be unconstitutional. 564 U.S. at 232, 131 S.Ct. 2419. Davis involved the search of a vehicle passenger-compartment after the police had removed the individuals from the vehicle and secured two arrestees in the back of patrol cars. Id. at 235, 131 S.Ct. 2419. The officers, in conducting the search, were relying on the United States Supreme Court’s holding in New York v. Belton, 453 U.S. 454, 459, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which had been utilized and controlling for almost thirty years, and which held that “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” Davis 564 U.S. at 233, 131 S.Ct. 2419 (quoting Belton, 453 U.S. at 459-60, 101 S.Ct. 2860). For almost thirty years, courts across the United States had uniformly read Belton’s holding as authorizing vehicle searches incident to arrest, regardless of whether the arrestee was secured in a patrol car or within reaching distance of the vehicle. Id. While Davis's appeal was pending'in the United States Court of Appeals for the Fourth Circuit, the United States Supreme Courfc released its decision in Arizona v. Gant, 566 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 486 (2009), which created a new rulé that limited Belton’s holding. In discussing the new Gant decision, the Supreme Court emphasized in Davis that the exclusionary rule’s purpose is to deter future Fourth Amendment violations: “For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.” Davis, 564 U.S. at 237, 131 S.Ct. 2419. The Supreme Court explained that Davis’s claim turned on the lack of police culpability, and determined that penalizing officers for continuing to follow the then-biriding law, which had been clearly controlling for almost thirty years at the time of the search, would not have the requisite deterrent effect needed to justify exclusion. Id. at 240-41, 131 S.Ct. 2419. About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn “what is required of them” under Fourth Amendment' precedent and .'will conform their conduct to these rules.’ But by'the same token, when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on bindirig appellate precedent does no more than “ ‘ac[t] as a reasonable officer would and should act’ ” under the circumstances. The deterrent ef-feet of exclusion in such a case can only be to discourage the officer from (“do[ing] his duty.’” . That is not the kind of deterrence the exclusionary rule seeks to foster. We have stated before," and we reaffirm today, that the harsh sanction of exclusion “should not be applied to deter objectively reasonable law enforcement activity.” Evidence obtained during a search conducted in reasonable reliance' on binding precedent is not subject tó the exclusionary rule. Id. at 241, 131 S.Ct. 2419 (emphasis and alterations in original) (citations omitted). Thus, the Supreme Court in Davis held that the good-faith exception to the exclusionary rule applied when officers acted with objectively reasonable reliance on binding judicial precedent that had been in place and followed, for almost thirty years. The State and our dissenting colleagues in this case seek to expand Davis to the significantly different facts here. We reject that expansion. In Davis, the officers, in conducting the later-invalidated search, were relying on the 1981 holding in Belton, which had been the law from the United States Supreme Court for almost thirty years and had been uniformly applied across the country before Gant was decided in 2009.[2] Conversely, Smallwood I was decided on April 29, 2011, and was under active consideration by this Court when the search of Carpenter’s cell phone was conducted on June 14, 2012. Unlike the law under Belton, which had been in force for almost thirty years when the officers in Davis relied on Belton, the officers in this case were relying on an opinion that was not only not well-established, but on the face'of the Smallwood I opinion, doubt was expressed and the case was certified to this Court for final Florida consideration; Moreover, the Second District’s decision in Willis, holding that the exclusionary, rule applied to a warrantless cell phone search, further fuels the notion that the issue of warrantless, cell .phone searches was a significant and still-deyeloping area of law and thus not one that the officers should have relied upon as being well-established precedent under Davis. See Willis, 148 So.3d at 482. The holding in Davis was logical, based on the longstanding, thirty-year precedent that had been overruled by- Gant. The State, however, asks us to expand Davis to a case where, the facts present a highly uncertain area of law and the precedent relied upon demonstrates on its face that it was certified to a higher court for resolution. The face of the opinion reflected this status. The State’s attempt fo cherry pick favorable parts of a district court of appeal opinion while ignoring other portions of that same opinion defies logic and expands Davis in a way that we cannot endorse. Recognizing the rapidly developing nature of technology, the First . District in Smallwood I expressed its concern with the holding,, which would permit warrant-less cell phone searches, and thus certified the question to this Court for final resolution as one of great public importance. 61 So.3d at 461-62. In expressing its unease, however, the First District was clearly satisfying the state-required procedural hurdle of issuing a decision for this Court to exercise jurisdiction to review and decide the issue, rather than issuing a final ruling that was contemplated to be the final Florida determination on the 'matter of war-rantless cell phone searches. As we explained in Floridians for a Level Playing Field v. Floridians Against Expanded Gambling, In order to have discretionary jurisdiction based on a certified question, there are essentially three prerequisites that must be met. First, it is essential that the district court of appeal pass- upon the question certified by it to be of great public importance .... Second, there must be a district court “decision” to review. See art. V, § 3(b)(4), Fla. Const. For instance, where a district court is unable to reach a clear majority decision on an issue and elects to certify a ques-tion without resolving the merits, we are without jurisdiction to answer such a question under article V, section 3(b)(4) of the Florida Constitution .... Third, ... the question must be in fact “certified” by a majority decision of the district court. 967 So.2d 832, 833 (Fla. 2007) (emphasis added) (footnote omitted);' see also art. V, § 3(b)(4), Fla. Const. (The Florida Supreme Court “[m]ay review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance ....” (emphasis added)). Thus, absent issuing an actual decision, the First District would not have been able to certify the question to this Court for final consideration and determination. Furthermore, in the Smallwood I opinion, the First District certified the precise question to this Court with regard to the new subject of cell phone searches as one of great public importance, thus placing law enforcement officers on actual notice that the case was subject to further consideration on the face of the opinion. 61 So.3d at 462. Until this Court issued either an order declining review or an opinion deciding the issue, Smallwood I was not final, well-settled, unequivocal, or clearly established. See Davis, 564 U.S. at 251, 131 S.Ct. 2419 (Sotomayor, J., concurring in judgment); see also United States v. Sparks, 711 F.3d 58, 64-66 (1st Cir. 2013) (elaborating on the meaning of “well-settled law”); United States v. Lee, 862 F.Supp.2d 560, 568-69 (E.D. Ky. 2012) (stating that officers must rely on unequivocal and well-settled decisions of binding legal authority); Willis, 148 So.3d at 483 n.2 (“[W]hen a Fourth Amendment issue is rapidly evolving, it is hard to justify an approach to the good-faith exception that allows the first defendant to reach the United States Supreme Court to receive the benefit of the exclusionary rule while other defendants in the legal pipeline do not.”). While the State relies on Pardo to argue the binding nature of the Smallwood I decision, it misapplies Pardo’s underlying premise from a different context that an opinion from a Florida district court of appeal is not final if it is still being reviewed by this Court. See Pardo, 596 So.2d at 666 (“This Court has stated that ‘[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court.’ ” (emphasis added)). In fact, the rule announced in Pardo was not designed or intended to describe the parameters of Fourth Amendment search and seizure law, especially for a case pending review in this Court; rather, it was a rule geared toward promoting judicial convenience in Florida’s uniquely constructed judicial system. E.g.,, Willis, 148 So.3d at 483 (“We are not inclined to believe that the rule announced in Pardo should be used in the Fourth Amendment context to determine whether evidence from a warrantless search is admissible.”). Moreover, while an opinion from a district court of appeal may be binding on lower trial courts in Florida under a Pardo theory, this fact does not necessarily justify law enforcement’s reliance on thati decision as “binding” law authorizing a warrantless cell phone search, especially when on actual notice of the pending review in this Court. Indeed, this issue can be likened to that of Schró-dinger’s Cat, where a decision of a district court of appeal may be both binding and not binding, while under review in this Court, until a decision is rendered by this Court ultimately answering the question. Additionally, Davis made clear that the exclusionary rule is only to be applied if the underlying deterrent effect on law enforcement will be achieved, which was found not to be the case in Davis, 564 U.S. at 237, 131 S.Ct. 2419 (“Where suppression fails to yield ‘appreciable deterrence,’ exclusion is ‘clearly ... unwarranted.’ ” (quoting United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976))). In Carpenter’s case, however, suppression would further the exclusionary rule’s intended deterrence because law enforcement officers would now, in areas of unsettled law, be reminded to err on the side of caution by obtaining a search warrant instead of relying on nonfinal, unsettled questions of law still under active review in this Court. The “conscientious police work” discussed in Davis requires that officers not engage in warrant-less searches unless clearly authorized by law to do so. Thus, if the law on a particular issue is still developing, it is not reasonable for officers to rely on questionable decisions in pipeline cases to justify war-rantless searches when the nonfinal nature of the decision is noted on the. face of the opinion. Our conclusion is again buttressed by the Second District’s opinion in Willis. Perhaps the most instructive aspect of Davis, for our purposes, is Justice Sotomayor’s opinion concurring in judgment, which predicted the issue arising in the present case and explicitly stated that the holding in Davis did not answer the question of the good-faith exception’s application to areas of law that were unsettled at the time of the search. Davis, 564 U.S. at 250-51, 131 S.Ct. 2419 (Sotomayor, J., concurring in judgment). This is such a case. Aside from the national variation on the issue of warrantless cell phone searches incident to arrest, the very fact that the case on which the officers relied was under active review in this Court indicates that the law was not yet settled as to the issue of warrantless cell phone searches in Florida at the time of Carpenter’s search for purposes of the Davis analysis. The First District’s certified question to this Court only furthers the notion that the officers in Carpenter’s case should not have relied on Smallwood I as being the final controlling judicial precedent in this area of constitutional law while the case was certified to this Court for final decision. Since the issue decided in Smallwood I was one concerning a rapidly developing area of unsettled law at the time of the officers’ alleged reliance, the State’s reliance on the United States Supreme Court’s holding in Davis to justify the search is misplaced. Furthermore, the dissent attempts to broadly force cases with vastly different facts into Davis’s application, which is precisely what Justice Sotomayor predicted would happen. Finally, in determining whether exclusion is warranted in this case, we must determine whether the deterrent benefits of exclusion outweigh the heavy societal costs. If, as the Government argues, all rulings resolving unsettled Fourth Amendment questions should be nonretroactive, then, in close cases, law enforcement officials would have little incentive to err on the side of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice would be excluded-only in the one case definitively resolving the unsettled question. Davis, 564 U.S. at 250-51, 131 S.Ct. 2419 (Sotomayor, J., concurring in judgment) (quoting United States v. Johnson, 457 U.S. 537, 561, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)); see also Lee, 862 F.Supp.2d at 569 (“If law enforcement could ‘rely oh non-binding authority ...” officers would ‘beg forgiyeness rather than ask permission in ambiguous situations involving ... basic civil rights,”’ (citations omitted)). Thé scenario described above is the exact scenario at issue in Carpenter’s case. Holding that the good-faith exception applies when officers rely on developing law that facially demonstrates the status of further review is a slippery slope which essentially abrogates the exclusionary rule in cases concerning unsettled law. The deterrent benefits of exclusion in Carpenter’s case outweigh the societal costs because exclusion reminds law enforcement officers that warrantless searches are the exception to the rule and that this exception should only be used when specifically authorized by law. The' rule on searches in questionable areas of law is simple and unequivocal: Get a warrant. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (.“[T]he most basic constitutional rule in this area is that ‘searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.’. ” (emphasis added)); see also Riley v. California, — U.S. —, 134 S.Ct. 2473, 2493, 189 L.Ed.2d 430 (2014) (“Our cases have historically recognized that the warrant requirement is ‘an important working part of our machinery of government,’ not merely ‘an inconvenience to be somehow “weighed” against the claims of police efficiency.’” (quoting Coolidge, 403 U.S. at 481, 491, 91 S.Ct. 2022)), Therefore, contrary to the dissent, we hold that, under Davis, the good-faith exception to the exclusionary rule does not apply to Carpenter’s case because the officers were not relying on the type of longstanding, thirty-year appellate precedent at issue in Davis, but rather on a nonfinal, pipeline case still under active review in this Court at the time of the search. CONCLUSION Accordingly, we quash the First District’s decision below in Carpenter and h’old that the good-faith exception to the exclusionary rule does not apply to the officers’ warrantless search of Carpenter’s cell phone in this case. Moreover, although Willis reached the correct result, we do not adopt the reasoning used in reaching that result. As such, we disapprove of the opinion in Willis to the extent that it conflicts with this opinion. It is so ordered. LABARGA, C.J., and PARIENTE, and QUINCE, JJ., concur. LAWSON, J.,' dissents with an opinion, in which CANADY and POLSTON, JJ., concur, . Willis also involved a warrantless cell phone search conducted after" Smallwood I but before Smallwood II. The Second District found that the warrantless search at issue was permitted at the time because Smallwood I was a decision then binding in Florida under Pardo v. State, 596 So.2d 665 (Fla. 1992). Willis, 148 So.3d at 482. The Second District nevertheless noted that the case law with regard to what constitutes ‘‘binding appellate precedent” permitting ‘‘objectively reasonable reliance” was still unsettled. Id. The rule in Pardo was created to establish consistency within Florida law in light of our unique system in which the intermediate appellate courts are intended to. be the normal final courts of review .... But an opinion from a single district court is not binding on another district court in Florida. We are not inclined to believe that the rule announced in Pardo should be used in the Fourth’ Amendment context to determine whether evidence from' a warrantless search is admissible. Id. at 482-83 (citations omitted). The Second District expressed its doubts that the rule announced in Pardo was intended to establish that “one recent decision from another Florida district court of appeal on such a controversial issue [was sufficient] to create ‘binding precedent,’ at least in qther districts, for purposes of the good-faith exception as announced in Davis." Id. at 483. Thus, the Second District in Willis found that the good-faith exception to the exclusionary rule did not apply. Id. . In fact, a cursory search of Westlaw reveals at least 3,086 cases referencing Belton from the time of its release until the release of Gant.